[No. A120536. First Dist., Div. Three. June 23, 2008.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
PAUL GEORGE, Real Party in Interest.

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan, Bridget A. Billeter and Moona Nandi, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Brendan Conroy for Real Party in Interest.

OPINION

**POLLAK, J.**—Real party in interest Paul George is an adjudicated sexually violent predator (SVP) who has been deemed eligible for placement in a conditional, supervised release program. Because of the extreme geographic restrictions that limit where such a person may reside, the State Department of Mental Health (the department) was unable over the course of a year to place George within San Francisco, the county of his domicile. When the department was about to seek court permission to place George in a conditional release program outside of San Francisco, his two-year commitment under the former provisions of the Sexually Violent Predators Act (SVPA), Welfare and Institutions Code[1] section 6600 et seq., was about to expire. The district attorney filed a new petition to recommit George. In preparing to commence jury trial the issue arose whether, to establish George's continuing status as an SVP, it is necessary to prove that public safety requires his continued custody in a locked facility or whether it is sufficient to prove that public safety requires at least commitment to a supervised community placement. The trial court adopted the former view and, since the district attorney acknowledged that the evidence would not show that George requires continued confinement in a locked facility, dismissed the petition. We conclude, however, that in order to recommit George as an SVP, it is sufficient to prove that public safety requires either his confinement in a secure facility or supervised community placement. We shall therefore reverse the dismissal of the petition and remand for trial on the issue so defined.

FACTUAL AND PROCEDURAL HISTORY

While in the military in 1970, George was convicted of orally copulating two minor children and sentenced to four years in prison. During the 1970's and 1980's he pled guilty to a variety of sexual crimes. In 1987 he pled guilty to six counts of child molestation involving different children and was sentenced to 16 years in prison. In 1999, prior to his release from prison, he was found to be an SVP and committed to a two-year term in a state hospital. He was subsequently recommitted for three successive two-year terms. During the course of treatment George admitted that he previously molested between 100 and 150 minors.

George received treatment during the course of his confinement as an SVP and he ultimately petitioned the court for conditional release pursuant to

---

[1] Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

section 6608. On March 2, 2006, the court granted the petition and directed Liberty Healthcare Corporation, a contractor for the department, to "submit a recommendation of a suitable forensic release program to supervise and treat Mr. George."[2] Section 6608.5, subdivision (a) of the SVPA provides that "[a] person . . . conditionally released pursuant to this article shall be placed in the county of the domicile of the person prior to the person's incarceration, unless the court finds that extraordinary circumstances require placement outside the county of domicile." George's former domicile was San Francisco. Despite the statutory directive that George be placed in the community in accordance with his treatment and supervision plan within 30 (formerly 21) days of notice to the community program director of the court's finding (§ 6608, subd. (f); see Stats. 2007, ch. 571, § 3), over the next year the department could not locate a suitable placement for George in San Francisco. A recent amendment to the SVPA prohibited placing George within one-quarter of a mile of any public or private school with students in any grade between kindergarten and 12th grade. (§ 6608.5, subd. (f); Stats. 2005, ch. 486, §§ 1, 1.5.) And Proposition 83, a voter-approved initiative that went into effect on November 8, 2006, prohibited registered sex offenders such as George from living within 2,000 feet of a school or park where children regularly gather. (Pen. Code, § 3003.5, subd. (b).) These measures and police opposition led Liberty Healthcare to advise the court on February 23, 2007, that "we have reached the point where we must consider housing options outside the City and County of San Francisco."[3]

---

[2] Although the district attorney initially opposed the motion for conditional release, by February 2007 the district attorney was urging the court to proceed with the process of finding a suitable outpatient placement.

[3] On April 3, 2006, Liberty Healthcare submitted a report to the court outlining George's conditional release program. Some of the elements of the program were already in place—a regional coordinator to manage the case, a polygrapher, and a psychiatrist had all been selected. The credentialing and contracting process with a treatment provider had begun but had not yet been completed; and a victim advocate had not yet been selected. As to finding housing in San Francisco, Liberty Healthcare cautioned: "Our analysis shows large areas of the city are not available [for housing]. Liberty has also begun to consult with local law enforcement for possible housing sites. None has yet been inspected. Liberty Healthcare will investigate all potential housing identified and determine whether it will enable adequate supervision for the safety of the community. Landlords will be made aware of Mr. George's SVP status."

By June 15, 2006, a progress report from Liberty Healthcare reported that "[m]ost of the components for the conditional release are in place except the housing location." In a followup report dated August 22, 2006, housing continued to be the major obstacle to placing George in a conditional release program. As of December 28, 2006, Liberty Healthcare was still unable to identify a suitable placement in San Francisco. Its efforts to do so included (1) pursuing George's personal contacts who might provide housing opportunities/leads; (2) hiring a special project coordinator to locate San Francisco housing; (3) consulting with the San Francisco Department of Public Health, which had been designated to assist with search efforts; (4) investigating residential programs, board and care facilities, homeless/low-income housing resources, and probation sex offender housing resources, and reviewing the residences of all the

The court ultimately scheduled for March 9, 2007, a hearing pursuant to section 6608.5, subdivision (a) to determine whether extraordinary circumstances[4] required placing George outside of San Francisco. However, on February 23, 2007, George requested the court to vacate the hearing. At that point George had been interviewed by four doctors in advance of the expiration of his current two-year commitment. Based on the number of doctors conducting the evaluations, he correctly inferred that there was a difference of opinion as to whether he remained an SVP and, thus, that there was also a realistic prospect that no recommitment petition would be filed and he would soon be unconditionally released, in which case there would be no need to locate a placement facility. (See § 6601, subds. (e), (f); *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 905–909 [119 Cal.Rptr.2d 1, 44 P.3d 949] *(Ghilotti)*.) The court agreed that there was then no reason to pursue the process for placement outside of San Francisco but ordered Liberty Healthcare to pursue outstanding leads in the event that there was a recommitment and the need for outpatient placement.

On June 5, 2007, the district attorney did file a fourth petition seeking George's recommitment, pursuant to the revised provisions of the SVPA under which a determination that George remains an SVP will result in an

---

sex offenders then registered to live in San Francisco; (5) considering the placement of a trailer on county-owned land; (6) establishing a local housing working group comprised of representatives of the police, sheriff, public defender, city attorney, and behavioral health; (7) contacting real estate and property agents (who cumulatively listed at least 3,000 apartments in the city), placing a weekly ad on "craigslist" for housing; and (8) contacting law enforcement agencies for referrals to special programs which might potentially have provided an appropriate placement.

On December 8, 2006, the department recommended to the court that George be placed at the Potter Hotel on Mission Street near Ninth Street in San Francisco. The San Francisco Police Department adamantly opposed the recommendation. The letter from the chief of police stated: "San Francisco County is forty-nine square miles in area. There are approximately 266 schools servicing 62,000 children in the Unified School District. The single-room-occupancy hotels (SROs) are clustered in these highly populated, mixed-use neighborhoods. Because of the dense, neighborhood-themed demographics of San Francisco, virtually any proposed community placement of Mr. George in the county would violate the imposed restrictions, and the Department would oppose as a public safety issue to the children in the area." Noting the police department's opposition to the proposed placement and the newly adopted provisions of Proposition 83, the court directed that new maps be prepared to determine whether any place in San Francisco would satisfy the new requirements and indicated that a hearing might be necessary to determine whether exceptional circumstances warranted placement outside of San Francisco.

[4] "Extraordinary circumstances" in this context are defined as "circumstances that would inordinately limit the department's ability to effect conditional release of the person in the county of domicile in accordance with Section 6608 or any other provision of this article, and the procedures described in Sections 1605 to 1610, inclusive, of the Penal Code." (§ 6608.5, subd. (c).)

indeterminate commitment. (§ 6604; Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006).) In January 2008, as trial on the petition was about to commence, an issue arose as to what the jury would be instructed it must find to establish that George remains an SVP. George requested that the jury be instructed in accordance with CALCRIM No. 3454.[5] Under this standard instruction, if George presents evidence that he is amenable to voluntary treatment in the community, in order to find him to be an SVP the jury must find that it is necessary to keep him in custody in a secure facility to ensure the health and safety of others. The district attorney requested that the fourth element of CALCRIM No. 3454 be modified to read, "It is necessary to keep him in a secure facility or in monitored outpatient placement to ensure the health and safety of others."[6]

On January 30 and February 1, 2008, the court held an Evidence Code section 402 hearing at which testimony was received from the two experts the district attorney intended to call, Drs. Clark Clipson and John Hupka. According to Dr. Hupka, "Throughout [George's] adult years, his sex offenses have been predatory and this is a reflection of the nature of his paraphilia. I see no reason to suggest that his risk of future offenses would be any different. [¶] . . . The recent reports from his treatment providers at [Atascadero State Hospital] indicate that he has been participating well in treatment and making good progress. All indications are that he is ready for community based supervised treatment. Mr. George is not amenable to voluntary treatment. His paraphilia is too severe to be treated on a voluntary basis. Left to his own devices, Mr. George is at risk to sooner or later convince himself that sex with boys is once again ok. . . . While he is ready to move to Phase V community based supervised treatment at this time, any successful treatment with him will need to be supervised and long term. [¶] . . . My understanding is that he will be participating in the Liberty Phase V supervised treatment program and in that regard in-patient custody is no

---

[5] The relevant portion of CALCRIM No. 3454 reads: "The petition alleges that _____ <insert name of respondent> is a sexually violent predator. [¶] To prove this allegation, the People must prove beyond a reasonable doubt that: [¶] 1. (He/She) has been convicted of committing sexually violent offenses against one or more victims; [¶] 2. (He/She) has a diagnosed mental disorder; [¶] [AND] [¶] 3. As a result of that diagnosed mental disorder, (he/she) is a danger to the health and safety of others because it is likely that (he/she) will engage in sexually violent predatory criminal behavior(;/.) [¶] <Give element 4 when evidence has been introduced at trial on the issue of amenability to voluntary treatment in the community.> [¶] [AND [¶] 4. It is necessary to keep (him/her) in custody in a secure facility to ensure the health and safety of others.]"

[6] In the petition before this court, the Attorney General modifies the requested instruction to read: "It is necessary to keep him in custody in a secure facility or in a state-operated forensic conditional release program." This articulation is more precise and perhaps preferable, but both express the same concept and present the identical legal issue.

longer required." Similarly, it was Dr. Clipson's opinion "that Mr. George *is* at substantial—that is, a serious and well-founded risk—to commit another sexually violent predatory offense. . . . He can, in my opinion however, be safely treated and/or monitored in the community without placing the public in danger."[7]

After receiving this testimony, the superior court reaffirmed an earlier ruling that, assuming George presented evidence of amenability to voluntary treatment, it would give the unmodified CALCRIM No. 3454 instruction, requiring a showing that to ensure the safety of others it is necessary to keep George in custody in a secure facility, and it would preclude the experts from testifying that the risk to others would be eliminated by placing him in a community-based conditional release program. The court reasoned that the issue of conditional release was not before the jury, so that the experts were required to confine their opinions to whether it was necessary to confine George in a secure facility. The court also indicated at one point that it was unrealistic to present as an alternative George's placement in a community-based program since the department had been unable to place George in such a program. The district attorney acknowledged that the prosecution could not present evidence that public safety could be protected only by placing George in a locked facility and the court therefore dismissed the petition, but briefly stayed its order to permit an application to this court. On February 4, 2008, the instant petition was filed, together with a request that this court extend the stay. We did so, requested informal opposition and, ultimately, issued an order to show cause.

## DISCUSSION

■ Because the sole issue to be resolved in this case is a legal one, our review is de novo. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 257 [127

---

[7] The quotations in text are taken from the written reports of the two doctors that were included in the record before the trial court. Both doctors testified similarly. For example, the following testimony was given by Dr. Hupka: "Q. In your opinion, Dr. Hupka, does Paul George need to be confined in a secure facility in order to ensure the health and safety of others? [¶] A. He does not. I think the level of custody could be outpatient supervised custody, not inpatient custody. [¶] Q. In your opinion, Dr. Hupka, does Paul George need to be in a conditional release program, pursuant to the Sexually Violent Predator Act, in order to ensure the health and safety of others? [¶] A. Yes."

When pressed to consider the best alternative if conditional release were not an option, both doctors opined that if the alternatives were so limited, George should be unconditionally released.

Reports submitted by three other evaluators indicate that George is amenable to voluntary treatment in the community and therefore does not meet the criteria for an SVP under any circumstances. Those opinions are irrelevant for present purposes since the question now before us is whether the district attorney will have shown George to be an SVP if the jury accepts the contrary opinions of Hupka and Clipson.

Cal.Rptr.2d 177, 57 P.3d 654] (*Cooley*).) Although the superior court's order dismissing the SVP petition is an appealable order (*People v. Superior Court (Johannes)* (1999) 70 Cal.App.4th 558, 561, fn. 5 [82 Cal.Rptr.2d 852]), writ relief is appropriate. Awaiting resolution through the appeal process would not provide an adequate remedy since, in the interim, George either would be unconditionally released or his eventual transfer to a conditional release program, already long overdue, would be further delayed.

The SVPA was first enacted in 1995 (Stats. 1995, ch. 763, § 3, p. 5922) and has since been amended numerous times by the Legislature and by popular initiative. The measure is designed to accomplish the dual goals of protecting the public, by confining sexual offenders likely to reoffend, and providing treatment to those offenders. (See *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1144 [81 Cal.Rptr.2d 492, 969 P.2d 584] (*Hubbart*); *People v. Green* (2000) 79 Cal.App.4th 921, 927 [94 Cal.Rptr.2d 355].) The statute "allows for the involuntary commitment of certain convicted sex offenders, whose diagnosed mental disorders make them likely to reoffend if released at the end of their prison terms." (*Cooley, supra,* 29 Cal.4th at p. 235.) Those committed pursuant to the SVPA are to be treated "not as criminals, but as sick persons." (§ 6250.) They are to receive treatment for their disorders and must be released when they no longer constitute a threat to society. (§§ 6606, 6607; *Hubbart, supra,* 19 Cal.4th at pp. 1147, 1162, 1166.)

The elaborate administrative and judicial process by which a convicted sex offender is evaluated by psychiatrists and psychologists to determine potential SVP status (§ 6601), probable cause is determined (§ 6602), and the issue is tried before the court or a jury (§§ 6603, 6604), has been described in numerous opinions from our Supreme Court. (See *Hubbart, supra,* 19 Cal.4th at pp. 1145–1149; *Cooley, supra,* 29 Cal.4th at pp. 243–245; *People v. Roberge* (2003) 29 Cal.4th 979, 984–985 [129 Cal.Rptr.2d 861, 62 P.3d 97] (*Roberge*); *Ghilotti, supra,* 27 Cal.4th at pp. 902–905.) From its inception, the statute has required that the mental condition of a person committed as an SVP be reevaluated "at least once every year." (§ 6605, subd. (a); see *Hubbart, supra,* 19 Cal.4th at p. 1147; *People v. Cheek* (2001) 25 Cal.4th 894 [108 Cal.Rptr.2d 181, 24 P.3d 1204].) Moreover, after having been confined for at least one year, the SVP periodically may petition the court for either conditional release under supervision and treatment in the community or for unconditional discharge. (§§ 6607, 6608; see § 6606, subd. (d).) Both through legislative action and the initiative process the SVPA was amended in 2006 to change the term of commitment for a person found to be an SVP from two years to an indeterminate term. (§§ 6604, 6604.1; Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006); Stats. 2006, ch. 337, § 55.) Nonetheless, the statute retains the requirement that the SVP be reevaluated annually.

(§ 6605, subd. (a).) ■ The provisions added in 2006 include the mandate that the annual report the department must submit to the court for each SVP "include consideration of whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative or an unconditional release is in the best interest of the person and conditions can be imposed that would adequately protect the community." (*Ibid.*)[8]

■ Under the statute as it currently reads, an SVP is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) In determining whether it is "likely" that the person will reoffend, the question is whether the individual presents a "*serious and well-founded risk*" of committing sexually violent criminal acts that will be of a predatory nature if the person is set free in the community. (*Cooley, supra,* 29 Cal.4th at p. 255, citing *Ghilotti, supra,* 27 Cal.4th at p. 922; see also *Roberge, supra,* 29 Cal.4th at pp. 985–988; *People v. Flores* (2006) 144 Cal.App.4th 625, 632 [50 Cal.Rptr.3d 567].) Evidence of the individual's amenability to voluntary treatment "is relevant to the ultimate determination whether the person is likely to engage in sexually violent predatory crimes if released from custody." (*Roberge, supra,* at p. 988, fn. 2; see *Cooley, supra,* at p. 256.) A person may be committed as an SVP only if he or she is "substantially dangerous without appropriate 'treatment *and custody.*' " (*Ghilotti, supra,* at p. 926; see *Cooley, supra,* at p. 256.) In *People v. Grassini* (2003) 113 Cal.App.4th 765, 777 [6 Cal.Rptr.3d 662] (*Grassini*), the Second Appellate District held that if the person resisting classification as an SVP presents evidence that he or she is amenable to voluntary treatment, the court sua sponte must "instruct the jury that it is to determine whether custody in a secure facility is necessary to ensure that the individual is not a danger to the health and safety of others." Based upon the holding in *Grassini,* CALCRIM No. 3454 includes as a fourth element that must be proved to establish SVP status if there is evidence of the individual's amenability to voluntary

---

[8] Subdivision (b) of section 6605 provides that if the department determines either that the person no longer meets the definition of an SVP or that conditional release is appropriate, it shall authorize the person to petition the court for an unconditional discharge or for conditional release to a less restrictive alternative. Following a hearing at which the court finds probable cause to believe the person's diagnosed mental disorder has changed sufficiently (*id.,* subd. (c)), there may be another trial at which the committed person is entitled "to the benefit of all constitutional protections that were afforded to him or her at the initial commitment proceeding" (*id.,* subd. (d)). Under section 6608, the SVP may petition the court for relief without the recommendation or concurrence of the Director of Mental Health.

treatment, that it is necessary to keep the person "in custody in a secure facility" to ensure the public health and safety.

 A person found to be an SVP is committed to the department for treatment pursuant to the SVPA. (§ 6604.)[9] The SVPA requires that the first year of treatment occur within a confined facility (§ 6608, subd. (c)) but treatment thereafter may be in an outpatient program if conditions can be imposed that adequately protect the community. (§ 6605, subds. (a), (b).)[10] Section 6608, subdivision (d) provides that if, upon application for conditional release to such a program, the court "determines that the committed person would not be a danger to others due to his or her diagnosed mental disorder *while under supervision and treatment in the community,* the court shall order the committed person placed with an appropriate forensic conditional release program operated by the state for one year. *A substantial portion of the state-operated forensic conditional release program shall include outpatient supervision and treatment.* The court shall retain jurisdiction of the person throughout the course of the program." (Italics added; see also §§ 6608.5, 6608.7, 6608.8.)[11]

*Grassini* was a case involving an initial commitment under the SVPA, so that the consequence of finding the person to be an SVP necessarily was commitment to a secure facility for at least one year. (§ 6608, subd. (c).) Thus, in that case and in the more common situation,[12] the instruction given

---

[9] The report of one of the experts included in the record describes the five-phase Sexual Offender Commitment Program at Atascadero State Hospital. Phase 1 is labelled "Treatment Readiness," phase 2 is called "Skills Acquisition," phase 3 is called "Skills Application," phase 4 is called "Skills Transition" and "serves as an opportunity for patients to begin focusing on transitioning from the hospital environment to the Conditional Release Program (CONREP) environment." Phase 5 "is the actual participation in a CONREP treatment program" in the community. The Attorney General acknowledges that George has been "promoted" to phase 5 of the Sexual Offender Commitment Program.

[10] Section 6606, subdivision (a) provides: "A person who is committed under this article shall be provided with programming by the State Department of Mental Health which shall afford the person with treatment for his or her diagnosed mental disorder." Subdivision (d) of section 6606 authorizes the department "to provide the programming using an outpatient/day treatment model, wherein treatment is provided by licensed professional clinicians in living units not licensed as health facility beds within a secure facility setting, on less than a 24-hour a day basis."

[11] After one year in the conditional release program the court must conduct another hearing to determine if the person should be unconditionally released from commitment. (§ 6608, subd. (d).) If the court determines that the person should not then be unconditionally released, the court may place the person on outpatient status in accordance with procedures described in the Penal Code. (§ 6608, subd. (g).)

[12] The situation that has arisen in this case may recur, however, in connection with a petition to recommit a person found to be an SVP under the previous version of the statute authorizing two-year commitments. The appropriate standard for determining whether a person previously found to be an SVP remains an SVP may also arise in the context of hearings under section

in *Grassini*, under which the necessity for custody "in a secure facility" must be found in order to find the person to be an SVP, may be justified. However, this case involves a successive petition and George has already received treatment for the minimum one year in a locked facility as required by the SVPA. The Attorney General before this court acknowledges, as did the district attorney before the trial court, that George no longer requires locked confinement. "[T]he choice for the jury in this case," the Attorney General argues, "is not whether George should be in a 'secure facility,' but whether he should remain under involuntary commitment as an SVP."[13] The requested modification to CALCRIM No. 3454 therefore is appropriate and should be given. If the jury accepts the opinion of Drs. Hupka and Clipson that George, although amenable to involuntary treatment under a supervised release program, is not amenable to unsupervised voluntary treatment and will remain a danger to others if unconditionally discharged, he remains an SVP even though locked confinement is no longer necessary.

■ While some language in the SVPA and in many of the Supreme Court decisions upon which *Grassini* relied refers to whether the prior sex offender will pose a danger to others if released from "custody,"[14] in context what is meant is not necessarily custody "in a secure facility." The references to the need for "custody" to protect the public must be understood to include the constructive custody that exists when the individual is placed in a conditional release program under the department's supervision.[15] If the individual will pose a sufficient threat of reoffending if not under the department's supervi-

---

6605 if the department has authorized the filing of a petition for conditional release or unconditional discharge, or in the context of hearings on applications to the court for such relief pursuant to section 6608.

[13] All parties recognize, and we agree, that because George has been receiving treatment under the SVPA in a locked facility for more than one year, if the present petition is sustained he will be eligible immediately for placement in a conditional release program.

[14] Of the cases George relies on, *Ghilotti* is factually most similar to the present case in that it also dealt with a recommitment where the real party in interest had been found suitable for conditional release. (*Ghilotti, supra,* 27 Cal.4th at p. 896.) However, because Ghilotti refused to accept the conditional release conditions (*ibid.*), the conditional release program was not a viable option in that case.

[15] The concept of constructive custody is not new. (See, e.g., *In re Marzec* (1945) 25 Cal.2d 794, 797 [154 P.2d 873] ["As a prisoner upon parole, Marzec is constructively a prisoner under sentence in the legal custody and under the control of the Department of Corrections. Accordingly, he is not free from legal restraint by the penal authorities . . . ."]; *In re Harincar* (1946) 29 Cal.2d 403, 408 [176 P.2d 58] [parolee remains constructively a prisoner]; *In re Sturm* (1974) 11 Cal.3d 258, 265 [113 Cal.Rptr. 361, 521 P.2d 97] [parolee remains within the constructive control of adult authority]; *In re Petersen* (1958) 51 Cal.2d 177, 181 [331 P.2d 24] [person free on bail is in constructive custody]; *In re Smiley* (1967) 66 Cal.2d 606, 613 [58 Cal.Rptr. 579, 427 P.2d 179] [person released on his own recognizance is in constructive custody].)

sion and control within a conditional release program, the person remains an SVP even though it is not necessary to confine the person in a locked facility. A prior sex offender should not be classified as an SVP if that person can reliably be expected *voluntarily* to accept treatment that will control predatory urges and remove the threat to the safety of others. However, the person is an SVP if supervised involuntary treatment is necessary to provide that protection, even if that involuntary treatment is pursuant to other provisions of law that might eliminate the danger to others. (*People v. Calderon* (2004) 124 Cal.App.4th 80 [21 Cal.Rptr.3d 92] [evidence of the appropriateness of an alternative mandatory commitment pursuant to the Lanterman-Petris-Short Act (§ 5000 et seq.) properly excluded from determination of SVP status].) "Only in cases where the defendant shows amenability to voluntary treatment should the jury face a choice between involuntary SVPA commitment and voluntary treatment." (124 Cal.App.4th at p. 93.)

 As indicated above, the fundamental question under the SVPA is whether a prior sex offender presents a serious and well-founded risk of committing future sexually violent predatory acts if set " 'free in the community.' " (*Cooley, supra,* 29 Cal.4th at p. 255; see *Ghilotti, supra,* 27 Cal.4th at p. 922.) Those who initially evaluate a prior sex offender to determine SVP status must determine whether the individual is "likely to engage in acts of sexual violence *without appropriate treatment and custody.*" (§ 6601, subd. (d), italics added; see *Ghilotti, supra,* at pp. 924–925.) If the court determines that there is probable cause to find the individual to be an SVP, trial is required to determine whether the person is "likely to engage in acts of sexual violence upon his or her release from the jurisdiction of the Department of Corrections or other secure facility." (§ 6602, subd. (a); see *Cooley, supra,* at p. 256.) In ruling on a petition for conditional release, the court must determine whether the person "would not be a danger to others due to his or her diagnosed mental disorder *while under supervision and treatment in the community.*" (§ 6608, subd. (d), italics added; see § 6608, subd. (a).) The SVPA asks "whether, as the result of a diagnosed mental disorder, the person presents a substantial danger of reoffense if *released without conditions,* or whether instead he is safe only if restrained, supervised, and treated involuntarily under the Director's custody." (*Ghilotti, supra,* 27 Cal.4th at pp. 926–927, some italics omitted; see *Cooley, supra,* 29 Cal.4th at p. 256; *Roberge, supra,* 29 Cal.4th at p. 986.) Even though an SVP placed in a conditional release program is not in a locked facility, he or she is not released without conditions and remains within the control of the department. In that critical sense, the individual is not "free" in the community.[16] It is the supervision and involuntary treatment provided through the

---

[16] If the SVP successfully completes at least one year in such a program he may petition for an unconditional release from the commitment. (§ 6608, subd. (d).)

community release program that reduces the risk of reoffense sufficiently to permit the individual to be released within the community.

 Thus, under the circumstances presented here, the jury should be instructed that it is sufficient to find George to be an SVP if, all other conditions being established, George will constitute a danger to the public if not kept in custody in a secure facility or in a state-operated forensic conditional release program.[17] If the district attorney's evidence is accepted, George would remain likely to reoffend and pose a danger to the safety of others if unconditionally released. In that case, both the language and the purpose of the SVPA justify his designation as an SVP, with the consequent supervision and compulsory treatment he will receive through the conditional release program.

We share the trial court's evident concern that despite the uniform opinion of the mental health professionals that George is ready for placement in a community-based program, the department was unable to place him in such a program within the county of his domicile despite efforts over an extended period of time. The limitations that have been placed on where a sex offender may reside undoubtedly are largely responsible for the difficulty. Nonetheless, the SVPA contemplates that a prior sex offender who can safely be placed in an unlocked community program will be placed in such a program within the time constraints specified in the statute. If there is no such program that can accommodate George, remedial action may be necessary both to obtain compliance with the statute and to avoid potential constitutional infirmity. However, despite the delay that has developed in placing George in such a program, there is as yet no basis to assume that he cannot and will not be placed in such a program. Should the present petition to again deem George an SVP be sustained, the court should proceed forthwith to a hearing under section 6608.5, subdivision (a) to determine whether extraordinary circumstances require placing George outside of San Francisco, in which case he presumably will be promptly placed in an appropriate program. Although we recognize the unfairness to George in failing to place him in a noncustodial program as the statute requires, we do not believe that the remedy is to abrogate the protective scheme of the SVPA by discharging him unconditionally if the evidence proves that without supervision he will remain a danger to the public.

---

[17] Contrary to suggestions made during the course of oral argument, the jury will not be required to make decisions as to the appropriate treatment for George. As before, the jury will determine only whether George is an SVP as defined in the court's instructions.

## DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its prior orders denying the motion of the district attorney for a pinpoint instruction, dismissing the recommitment petition, and ordering George's release, and to enter a new order granting the motion for an instruction as discussed herein. The stay previously issued by this court is dissolved.

McGuiness, P. J., and Siggins, J., concurred.