[No. C070719. Third Dist. Feb. 7, 2013.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF PLACER COUNTY, Respondent;
TIBOR KARSAI, Real Party in Interest.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts III and IV of the Discussion.

## COUNSEL

Joyce E. Dudley, District Attorney, and Michael J. Carrozzo, Deputy District Attorney, for Petitioner.

Jonathan Richter, Chief Defense Attorney, and Kenneth Hahus, Assistant Public Defender, for Respondent.

No appearance for Real Party in Interest.

R. Scott Owens, District Attorney (Placer), Jeffrey R. Wood and Andrew Todd Kuhnen, Deputy District Attorneys, as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**ROBIE, J.**—The Sexually Violent Predator Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.)[1] provides that, under certain circumstances, a person who has been committed as a sexually violent predator (SVP) can be conditionally released into the community under a program of outpatient supervision and treatment. (See §§ 6608–6609.3.) In October 2010, the Placer Superior Court determined that the real party in interest in this proceeding, Tibor Karsai, who has been committed as an SVP since 1998, should be conditionally released. A year and one-half later, after an exhaustive but ultimately unsuccessful search for an acceptable residence for Karsai, the superior court ordered that Karsai was to be conditionally released into Santa Barbara County without a fixed residence, i.e., as a transient.

In this mandamus proceeding, the District Attorney of Santa Barbara County (Santa Barbara) seeks a writ of mandate to prevent Karsai's release without a fixed residence, contending "there is no provision [of law] whatsoever that allows an SVP to be released as a transient." Santa Barbara also contends the superior court erred in determining that Santa Barbara County was Karsai's county of domicile immediately before the incarceration that preceded his commitment as an SVP, and Santa Barbara argues that the superior court failed to comply with statutory notice requirements before ordering Karsai's release.

---

[1] The SVPA was amended effective June 27, 2012—after the commencement of this proceeding—to reflect the change of the State Department of Mental Health to the State Department of State Hospitals and the change of the Director of Mental Health to the Director of State Hospitals. (Stats. 2012, ch. 24, §§ 63, 66.) Because this change is not substantive, we will cite the current versions of the statutes in this opinion. Also, we will refer to the State Department of State Hospitals as the department, and all further section references are to the Welfare and Institutions Code unless otherwise noted.

In the published portion of our opinion, we conclude there is nothing in the SVPA that precludes a court from ordering the conditional release of a person committed as an SVP even though no fixed residence has been located for the person before his release. We do not decide whether it was an abuse of discretion to release Karsai under the facts of this case because that question is not before us. Instead, we decide only what we are called upon to decide by Santa Barbara's writ petition, namely, that conditional release as a transient is not prohibited by the SVPA.

Given this conclusion, it bears noting that the provisions of the SVPA, and the conditional release program under the SVPA, have been carefully designed to protect the public regardless of whether a person on conditional release has a fixed residence at the time of release. Under the provisions of the SVPA, a person committed as an SVP can be conditionally released *only* upon a determination by a court of law that the person will pose *no danger* to others if under outpatient supervision and treatment in the community. That means that in every case in which conditional release is permitted, it has been determined that the person released into the community *will not be* an SVP when provided with proper supervision and treatment. Moreover, whether the person released into the community has a fixed residence, the conditional release program involves "an intensive regimen of treatment and supervision" that includes "at least weekly individual contact, weekly group treatment, [and] weekly drug screening" and that *can* include "surveillance, polygraph examinations, anti-androgen therapy, Global Positioning System [tracking], increased supervision through random visits and Penal Code [section] 290 . . . community notification."[2] Thus, even a transient participating in the conditional release program will be under near constant supervision.

It also bears noting that at any given time the number of persons conditionally released into the community following a commitment as an SVP is actually quite small. As of July 2011, only 717 persons had been committed as SVP's since the advent of the commitment program in 1996. (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 760 (2011–2012 Reg. Sess.) as amended Aug. 6, 2012, p. 3.) Of this number, only *eight* were in the conditional release program as of May 2011. (Cal. State Auditor, Sex Offender Commitment Program (July 2011) p. 9.)

In the unpublished portion of our opinion, we reject Santa Barbara's challenge to the superior court's determination of Karsai's county of domicile, as well as Santa Barbara's notice argument. Accordingly, we will deny

---

[2] The foregoing information can be found on the department's official Web site in its description of the "Conditional Release Program (CONREP)" that serves SVP's. (See <http://www.dsh.ca.gov/Forensics/FAQs.asp> [as of Feb. 7, 2013].)

Santa Barbara's writ petition and dissolve the stay of the order releasing Karsai as a transient into an outpatient program in Santa Barbara County.

## FACTUAL AND PROCEDURAL BACKGROUND

Karsai was committed as an SVP in 1998. In October 2010, the superior court found (pursuant to subd. (d) of § 6608) that Karsai would not be a danger to the health and safety of others in that it was not likely that he would engage in sexually violent criminal behavior due to his diagnosed mental disorder if under supervision and treatment in the community. Based on this finding, the court ordered Karsai placed with an appropriate forensic conditional release program. (§ 6608, subd. (d).)

Between December 2010 and July 2011, the court reviewed the status of Karsai's proposed placement in the community five times. At some point during that period, prior to the middle of May 2011, the court apparently determined that Santa Barbara County was Karsai's county of domicile.[3] On May 17, 2011, the department gave official notice that it was recommending to the court that Karsai be placed at an address in Santa Barbara County (his mother's home). Santa Barbara opposed the proposed placement and moved for reconsideration of the determination of domicile in Santa Barbara County, arguing that the county of domicile was instead San Luis Obispo County. The San Luis Obispo District Attorney appeared and argued that the court's initial determination of domicile in Santa Barbara County was correct.

On July 22, 2011, the court considered the domicile issue again and determined that Santa Barbara County was the proper domicile for purposes of conditionally releasing Karsai.

In September 2011, the court reviewed the status of Karsai's proposed placement once again, ordering that the court be given an update on placement efforts made by Liberty Healthcare (manager of the California conditional release program) and requesting that the parties provide the court with briefing on the issues that could constrain a placement in Karsai's mother's home in Santa Maria. Thereafter, on October 25, 2011, the matter came on for hearing. Liberty reported that its staff had traveled 6,793 miles in a year of searching for a residence for Karsai and had viewed 1,261 properties in

---

[3] The record is sparse on this part of the proceedings, but Karsai included as an exhibit to his opposition to the petition and his return to the order to show cause a motion signed by the Santa Barbara District Attorney's Office on June 9, 2011, for a hearing on June 16 seeking "reconsideration" of the superior court's finding of domicile in Santa Barbara County. Karsai also included a notice from the department dated May 17, 2011, that showed the county of domicile as Santa Barbara. Thus, the initial determination of domicile must have occurred before mid-May.

Santa Barbara, Ventura, and San Luis Obispo Counties. The only potential residence Liberty had found was Karsai's mother's home in Santa Maria. At the end of that hearing, the court ordered Liberty to place Karsai at that location pending further order of the court and set a hearing for December to hear further comment before issuing a final order.

In an order shortly following the October 2011 hearing, the court determined that Karsai's mother's home was not disqualified as a potential residence for Karsai despite its proximity to a park and an elementary school. In November 2011, however, Liberty informed the court that Karsai's family had withdrawn his mother's home as a placement/residence site because the family had been beset by the local media. Liberty asked the court if it should continue the housing search elsewhere. Following the hearing in December, the court found that extraordinary circumstances existed within the meaning of section 6608.5, subdivision (a), justifying a search for "any" available placement "without being constrained to San Luis Obispo or Santa Barbara County."

In February 2012, Liberty reported that it had now reviewed more than 1,830 sites and had identified two possible locations: an apartment in Sacramento and a small home in Auburn. At a hearing that same month, the People (presumably represented by the Placer County District Attorney's Office) and Karsai both objected to placement at either of those locations. The People objected because of the proximity to one of Karsai's victims, and both sides objected "on the basis that the placements would provide no support structure for Mr. Karsai." Agreeing that it would be "fruitless" to pursue those placements, the court ordered Liberty to check into the option of placing Karsai in a travel trailer on a pad next to the San Luis Obispo County Sheriff's Office. A review date was set for March 19, 2012.

A week before the review hearing, Liberty informed the court there were objections to placement in the trailer and that the pad was "not Jessica Law compliant." At the March hearing, the court concluded that "[t]he statutory scheme for placement of persons to be placed on conditional release from [the] SVP program is simply not working." Noting that "the SVP statutory scheme contemplates that the [department] or its designee makes the decision regarding proposed placement options," the court determined that it did not have the authority to "compel the housing of Mr. Karsai at some public institution," "order that the [d]epartment . . . purchase property that meets the needs of Mr. Karsai for a residence," or "order the State of California to make available suitable housing within vacant or closed state facilities." Because it appeared to the court that "there is no suitable placement available either in Mr. Karsai's county of domicile, or elsewhere," the court ordered that Karsai be "released in Santa Barbara County as a transient." The court

also ordered Liberty to "design a program to assist Mr. Karsai to obtain shelter, provide program support, and to return for a placement review" in April. The court ordered Karsai released by April 16 and ordered that local authorities were to be notified of the intended placement.

A week later, on March 27, the department notified authorities in Santa Barbara County of the intended placement of Karsai in the county as a transient. On March 29, 2012, for some unexplained reason, the superior court issued its order releasing Karsai as a transient a second time.

On April 2, 2012, Santa Barbara commenced this proceeding by filing a petition for a writ of mandate in this court, seeking a writ directing the superior court to vacate its order releasing Karsai into Santa Barbara County as a transient. Santa Barbara argued that the superior court had erred in finding Santa Barbara County was Karsai's county of domicile, that there is no statutory authority for a transient release of an SVP, and that the court failed to give proper notice of its intent to release Karsai as a transient in the county.

On April 4, 2012, this court stayed the March 29 order releasing Karsai pending the filing of an opposition and further order of the court. On April 18, following Karsai's filing of his opposition, this court denied Santa Barbara's petition and lifted the stay. On April 20, Santa Barbara filed a petition for review in the Supreme Court. On April 23, the Supreme Court stayed both the March 19 order and the March 29 order to permit consideration of the petition for review. On May 16, the Supreme Court granted the petition and transferred the matter back to this court with directions to vacate the order denying mandate and to issue an order directing the superior court to show cause why the relief sought in the petition for writ of mandate should not be granted. On May 18, 2012, we complied with the Supreme Court's order and continued the Supreme Court's stay in effect pending further order. Karsai subsequently filed a return to the order to show cause, and Santa Barbara filed a traverse.

### DISCUSSION

### I

### *The SVPA*

■ The SVPA "allows for the involuntary commitment of certain convicted sex offenders, whose diagnosed mental disorders make them likely to reoffend if released at the end of their prison terms." (*Cooley v. Superior Court*

(2002) 29 Cal.4th 228, 235 [127 Cal.Rptr.2d 177, 57 P.3d 654].) By definition, an SVP is "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) ■ The SVPA "is designed to accomplish the dual goals of protecting the public, by confining [violent] sexual offenders likely to reoffend, and providing treatment to those offenders." (*People v. Superior Court (George)* (2008) 164 Cal.App.4th 183, 193 [78 Cal.Rptr.3d 711].) "Those committed pursuant to the SVPA are to be treated 'not as criminals, but as sick persons.' (§ 6250.) They are to receive treatment for their disorders and must be released when they no longer constitute a threat to society." (*Ibid.*)

■ "A person may be committed as an SVP only if he or she is 'substantially dangerous without appropriate "treatment and custody." ' " (*People v. Superior Court (George)*, *supra*, 164 Cal.App.4th at p. 194, italics omitted.) "The SVPA requires that the first year of treatment occur within a confined facility (§ 6608, subd. (c)) but treatment thereafter may be in an outpatient program if conditions can be imposed that adequately protect the community. (§ 6605, subds. (a), (b).)" (*George*, at p. 195.) If the court determines that an SVP "would not be a danger to others due to his or her diagnosed mental disorder while under supervision and treatment in the community, the court shall order the committed person placed with an appropriate forensic conditional release program operated by the state for one year. A substantial portion of the state-operated forensic conditional release program shall include outpatient supervision and treatment." (§ 6608, subd. (d).)

Once the court has determined that an SVP should be placed in a conditional release program, the community program director must "make the necessary placement arrangements and, within 30 days after receiving notice of the court's finding, the person shall be placed in the community in accordance with the treatment and supervision plan unless good cause for not doing so is presented to the court." (§ 6608, subd. (f).)

An SVP conditionally released for outpatient supervision and treatment "shall be placed in the county of the domicile of the person prior to the person's incarceration, unless the court finds that extraordinary circumstances require placement outside the county of domicile." (§ 6608.5, subd. (a).) The county of domicile is "the county where the person has his or her true, fixed, and permanent home and principal residence and to which he or she has manifested the intention of returning whenever he or she is absent. For the purposes of determining the county of domicile, the court may consider

information found on a California driver's license, California identification card, recent rent or utility receipt, printed personalized checks or other recent banking documents showing that person's name and address, or information contained in an arrest record, probation officer's report, trial transcript, or other court document. If no information can be identified or verified, the county of domicile of the individual shall be considered to be the county in which the person was arrested for the crime for which he or she was last incarcerated in the state prison or from which he or she was last returned from parole." (*Id.*, subd. (b)(1).) " '[E]xtraordinary circumstances' means circumstances that would inordinately limit the department's ability to effect conditional release of the person in the county of domicile in accordance with Section 6608 or any other provision of this article, and the procedures described in Sections 1605 to 1610, inclusive, of the Penal Code." (§ 6608.5, subd. (c).)

With the foregoing provisions in mind, we turn to the arguments made in this proceeding.

II

*Conditional Release of an SVP as a Transient*

In seeking to overturn the superior court's decision here, Santa Barbara contends "there is no provision whatsoever that allows an SVP to be released as a transient." We acknowledge that the SVPA does not expressly authorize the conditional release of an SVP into an outpatient program without a fixed residential address. At the same time, however, there is nothing in the SVPA that expressly requires an SVP to have a fixed residential address before he or she can be conditionally released.

In some places, the SVPA speaks generally in terms of placing a conditionally released SVP "under supervision and treatment in the community" (§ 6608, subd. (a)) and placing the conditionally released SVP "in the county of . . . domicile . . . prior to the person's incarceration" (except in extraordinary circumstances) (§ 6608.5, subd. (a)). In other places, the SVPA contemplates that the conditional release process will involve a specific residential address. For example, once the county of domicile has been determined, that county is supposed to "designate a county agency or program that will provide assistance and consultation in the process of locating and securing housing within the county for persons committed as sexually violent predators who are about to be conditionally released under Section 6608." (§ 6608.5, subd. (d).) The SVPA also provides that certain conditionally released SVPs "shall not be placed within one-quarter mile of any public or private school providing instruction in kindergarten or any of

grades 1 to 12, inclusive." (§ 6608.5, subd. (f).) Additionally, a notice the department is required to give at certain times in the process must include the "proposed placement address." (§ 6609.1, subd. (a)(5)(A).) Agencies receiving such a notice can comment on the "placement" or "location" of release (among other things), and "a single agency in the community of the specific proposed or recommended placement address may suggest appropriate, alternative locations for placement within that community." (*Id.*, subd. (b).) Based on any agency comments and the department's response to those comments, the court may "approve, modify, or reject the department's recommendation or proposal regarding the community or specific address to which the person is scheduled to be released." (*Id.*, subd. (c).)

■ Karsai argues that this latter statute, "by use of the conjunctive 'or' between 'community' and 'specific address' thus clearly contemplates that an SVP may be released with a 'specific address', i.e., as a non-transient, **or** may be released into the 'community', i.e., with no specific address in the community." We disagree that this conclusion can be drawn from this particular statute. When notice is given under section 6609.1 of a "proposed placement address" for an SVP who is to be conditionally released, that proposed placement necessarily involves both the specific address and the community in which that address is located. Subdivision (c) of section 6609.1 then allows the court to "approve, modify, or reject the department's recommendation or proposal regarding the community or specific address to which the person is scheduled to be released." In other words, the court can approve, modify, or reject the recommended or proposed community, or the court can approve, modify, or reject the recommended or proposed specific address within that community. For example, the court could approve placement in a particular city, but reject the specific address proposed in that city. Or the court could reject placement in that city altogether, thus obviating any need to consider the specific address proposed. The point is that, contrary to Karsai's assertion, subdivision (c) of section 6609.1 does not "clearly" contemplate release into a community as a transient without a fixed residential address. At the same time, however, the statute does not expressly foreclose such a release. Indeed, although various provisions in the SVPA contemplate that a "placement address" will be proposed, commented on, and approved or rejected, nothing in the SVPA specifically provides that if a fixed address at which the released person is to reside is not identified and approved by the court, the person cannot be released at all.

■ Santa Barbara argues that because an agency in the county of domicile is supposed to "provide assistance and consultation in the process of locating and securing housing" for a person about to be conditionally released (§ 6608.5, subd. (d)), "there is no ambiguity in the statute" and "[t]he plain language of the statute requires release only when housing is 'secured.' " Not so. Certainly the statute contemplates a process of locating and securing

housing, but neither this provision nor any other expressly requires that an SVP who has been found to qualify for conditional release must nonetheless remain in custody until specific housing is actually secured.

Santa Barbara contends "a clear indication that transient release is not authorized under the statute is provided in [section] 6608.5[, subdivision] (a)," when read in conjunction with subdivision (d) of that statute. Under subdivision (a), a conditionally released SVP must be placed in the county of domicile unless the court finds that extraordinary circumstances require placement in another county. Under subdivision (d) (as just discussed), an agency in the county of domicile is supposed to provide assistance and consultation in the process of locating and securing housing. In Santa Barbara's view, the inability to secure that housing must be one of the extraordinary circumstances that can require placement in another county. Under this view, however, "[i]f transient release were authorized under the statute, there would be no need to consider release into other counties."

■ We find this argument without merit because of Santa Barbara's unwarranted presumption that the inability to secure specific housing in the county of domicile is *necessarily* an extraordinary circumstance that requires placement in another county under section 6608.5. As we have seen, under the SVPA " 'extraordinary circumstances' means circumstances that would inordinately limit the department's ability to effect conditional release of the person in the county of domicile . . . ." (§ 6608.5, subd. (c).) In other words, an SVP can be placed in a county other than the county of domicile only if the superior court finds that the department's ability to conditionally release the SVP in the county of domicile is unreasonably limited by circumstances. What those circumstances might be, the statute does not say. It could be that circumstances in a particular county of domicile might prevent the SVP from receiving adequate outpatient treatment or supervision, such that it would be necessary to place the SVP in another county where adequate treatment and/or supervision would be available. Such circumstances, however, do not necessarily have to have anything to do with whether a specific residence has been secured for the SVP before his or her release. Indeed, there is nothing on the face of the SVPA that would prevent a court from finding that despite the lack of a specific residence, the department can nonetheless effect conditional release into the county of domicile without any inordinate limitation. ■ What constitutes an inordinate limitation on the department's ability to conditionally release the SVP (and thus extraordinary circumstances within the meaning of the SVPA) is for the court to decide, and if the court finds no such limitation, then release into the county of domicile is mandatory, even if no specific residence has been secured.

Of course, this does not mean that a court in a particular case could not find that the lack of a specific residence in the county of domicile qualified as

extraordinary circumstances within the meaning of section 6608.5, thus requiring placement in another county. It just means that the lack of a specific residence in the county of domicile is not, *as a matter of law*, an extraordinary circumstance within the meaning of the statute. Thus, whether lack of a specific residence requires placement in a county other than the county of domicile is something for the court to decide; it is not dictated by the SVPA.

Santa Barbara contends the court in *People v. Superior Court (George)*, *supra*, 164 Cal.App.4th at page 183 "held that an SVP cannot be released" as a transient. According to Santa Barbara, in *George* "the court not only refused to release the SVP because no permanent residence was located, but also allowed the prosecutor to file a new petition" that "would have allowed the prosecution to present new evidence which could have resulted in the previous[ly] authorized conditional release be[ing] rescinded for an additional period of time."

Santa Barbara's interpretation of the decision in *George* is wrong. In *George*, the department "was unable over the course of a year to place George within San Francisco, the county of his domicile. When the department was about to seek court permission to place George in a conditional release program outside of San Francisco, his two-year commitment under the former provisions of the [SVPA] was about to expire[, which would have resulted in his unconditional release]. The district attorney filed a new petition to recommit George [indefinitely under the revised provisions of the SVPA].[4] In preparing to commence jury trial the issue arose whether, to establish George's continuing status as an SVP, it [wa]s necessary to prove that public safety require[d] his continued custody in a locked facility or whether it [wa]s sufficient to prove that public safety require[d] at least commitment to a supervised community placement. The trial court adopted the former view and, since the district attorney acknowledged that the

---

[4] "On September 20, 2006, the Governor signed the Sex Offender Punishment, Control, and Containment Act of 2006, Senate Bill No. 1128 (2005–2006 Reg. Sess.) (Senate Bill 1128). (Stats. 2006, ch. 337.) Senate Bill 1128 was urgency legislation that went into effect immediately. (Stats. 2006, ch. 337, § 62.) Among other things, it amended provisions of the SVPA to provide the initial commitment set forth in Welfare and Institutions Code section 6604 was for an indeterminate term. (Stats. 2006, ch. 337, § 55.)" (*Bourquez v. Superior Court* (2007) 156 Cal.App.4th 1275, 1280 [68 Cal.Rptr.3d 142].)

"At the November 7, 2006 General Election, the voters approved Proposition 83, an initiative measure. (See Deering's Ann. Welf. & Inst. Code (2007 supp.) appen. foll. § 6604, p. 43.) Proposition 83 was known as 'The Sexual Predator Punishment and Control Act: Jessica's Law.' (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, p. 127.) Among other things, Proposition 83 'requires that SVPs be committed by the court to a state mental hospital for an undetermined period of time rather than the renewable two-year commitment provided for under existing law.' (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) analysis of Prop. 83 by Legis. Analyst, p. 44.)" (*Bourquez v. Superior Court, supra*, 156 Cal.App.4th at p. 1281.)

evidence would not show that George require[d] continued confinement in a locked facility, dismissed the petition." (*People v. Superior Court (George)*, *supra*, 164 Cal.App.4th at p. 188.)

Faced with the prospect of George's unconditional release, despite evidence that he remained a danger to others if he were not in a supervised outpatient treatment program, the People sought review of the trial court's decision via writ petition. (*People v. Superior Court (George)*, *supra*, 164 Cal.App.4th at pp. 183, 191–192.) The appellate court decided "that in order to recommit George as an SVP, it [wa]s sufficient to prove that public safety require[d] either his confinement in a secure facility or supervised community placement." (*Id.* at p. 188.) Accordingly, the appellate court "reverse[d] the dismissal of the petition and remand[ed] for trial on the issue so defined." (*Ibid.*)

From just the foregoing passages, it is apparent that Santa Barbara's interpretation of *George* is wrong. At issue in *George* was a petition to recommit an SVP and the proper standard to be applied in adjudicating such a petition, under circumstances where the only choice was between unconditional release or conditional release into an outpatient program (given the People's concession that the evidence would not show that George required continued confinement in a locked facility). The appellate court's holding was that in determining whether George was still an SVP, the question to be answered was whether he would "constitute a danger to the public if not kept in custody in a secure facility or in a state-operated forensic conditional release program." (*People v. Superior Court (George)*, *supra*, 164 Cal.App.4th at p. 198.) This has nothing to do with the question here, which is whether an SVP who already has been determined to qualify for conditional release—and thus has already been determined to pose no "danger to others due to his or her diagnosed mental disorder while under supervision and treatment in the community" (§ 6608, subd. (d))—can be released without a fixed residence or, instead, must remain confined until a residence is secured. Thus, *George* is entirely inapposite here.

■ Having exhausted Santa Barbara's arguments regarding the proper interpretation of the SVPA, and having reviewed the law carefully ourselves, we are left with the conclusion that nothing in the law forbids conditional release of an SVP as a transient. Moreover, to imply such a limitation into the law would raise serious constitutional issues. "Because civil commitment involves a significant deprivation of liberty, a defendant in an SVP proceeding is entitled to due process protections." (*People v. Otto* (2001) 26 Cal.4th 200, 209 [109 Cal.Rptr.2d 327, 26 P.3d 1061].) Once a court has determined that a particular SVP would not be a danger to the health and safety of others in that it is not likely that he or she would engage in sexually violent criminal

behavior due to his or her diagnosed mental disorder if under supervision and treatment in the community, that person unquestionably has a significant liberty interest in being released. To authorize an unspecified delay in that release by implying in the SVPA a requirement that the person must have a specific residence before release, when under the statutory scheme the securing of a specific residence is not a prerequisite to a finding that the person would pose no danger to others if under outpatient supervision and treatment, would run the risk that a person who is no longer dangerous will nonetheless have to remain in custody in a secure facility indefinitely simply because of some extraneous factor, such as public outrage, that interferes with finding and securing a fixed residence for that person.[5] To avoid such a potential due process problem, we believe the more prudent course—as well as that most consistent with the established canons of statutory interpretation[6]—is to not imply in the SVPA something the Legislature did not expressly include in it: the limitation that an SVP cannot be conditionally released in the community without a specific residence.[7] ▮▮ Thus, we conclude the transient release the superior court ordered here was not legally impermissible, as Santa Barbara contends. Whether the order was within the superior court's discretion under the facts presented here is not before us.[8] We simply conclude it was not legal error for the court to make the order it did.

## III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[5] In this case, 16 months elapsed from October 2010, when the superior court found Karsai would not be a danger to others if under supervision and treatment in the community, until March 2012, when the court finally ordered his release as a transient. During that time, Liberty reviewed more than 1,830 properties as potential residences for Karsai, to no avail. At this point, over two years have lapsed since the finding of nondangerousness and Karsai remains in a secure facility.

[6] "In the construction of a statute . . . , the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert was has been omitted . . . ." (Code Civ. Proc., § 1858.)

[7] It is worth noting that the Sex Offender Registration Act (Pen. Code, § 290 et seq.) specifically provides for offenders to register as transients.

[8] In its writ petition, Santa Barbara specifically asserted on this point that the superior court committed legal error by ordering Karsai to be released as a transient because "there is no statutory authority to allow [Karsai] to be released as a transient" and "there is no provision whatsoever that allows an SVP to be released as a transient." Likewise, in its (successful) petition for review to the Supreme Court, Santa Barbara stated that the issue presented was "[w]hether Welfare and Institutions Code [section] 6608.5 or any other provision of law permits the release of an adjudicated sexually violent predator as a 'transient' without any placement being secured by the California Conditional Release Program." At no time in this proceeding has Santa Barbara argued that it was an abuse of discretion for the superior court to release Karsai as a transient under the particular facts of this case.

*See footnote, *ante*, page 774.

## DISPOSITION

The petition for a writ of mandate is denied. The stay of the March 19 and March 29 orders is dissolved.

Blease, Acting P. J., and Duarte, J., concurred.

Petitioner's petition for review by the Supreme Court was denied May 20, 2013, S208719.