Filed 1/21/22  Camacho v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CIRO CAMACHO, | F082798 |
| Petitioner, | |
| v. | (Super. Ct. No. 146207) |
| THE SUPERIOR COURT OF MERCED COUNTY, | **OPINION** |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandamus/prohibition.  Ronald W. Hansen, Judge.  (Retired Judge of the Merced Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Fitzgerald, Alvarez & Ciummo and Douglas C. Foster for Petitioner.

No appearance for Respondent.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, Julie A. Hokans, and Sally Espinoza, Deputy Attorneys General, for Real Party in Interest.

-ooOoo-

## **INTRODUCTION**

In a "PETITION FOR WRIT OF MANDAMUS/PROHIBITION" (boldface omitted) filed on May 19, 2021, Ciro Camacho sought writ review of the Merced County Superior Court's May 7, 2021 order denying his motion to dismiss a civil commitment petition under the Sexually Violent Predators Act (SVPA) (Welf. & Inst. Code,[1] § 6600 et seq.) due to a violation of his right to a timely trial. On June 3, 2021, we summarily denied this petition. The California Supreme Court granted review, remanded the matter, and issued a stay of trial proceedings "to remain in effect pending further order of the Court of Appeal." In conformance with the high court's directions, we (1) vacated our order denying Camacho's petition; and (2) issued an order directing the People—the real party in interest—to show cause as to why writ relief should not be granted. The People filed a return on September 20, 2021, and Camacho filed a traverse on October 19, 2021.

Camacho asks us to issue a writ of mandate, prohibition, and/or habeas corpus vacating the superior court's May 7, 2021 order and dismissing the underlying action. For the reasons set forth below, we again deny his petition.

## **BACKGROUND[2]**

On August 22, 2002, a petition for Camacho's commitment as a sexually violent predator (SVP) was filed. At a September 24, 2002 hearing, the superior court heard witness testimony. The deputy district attorney and counsel for Camacho, Public Defender Wayne Eisenhart, each argued the matter. The court found probable cause

---

[1] Subsequent statutory citations refer to the Welfare and Institutions Code.

[2] This section of the opinion is based on exhibits attached to Camacho's writ petition, which include (1) a summary of the proceedings conducted in superior court; (2) Camacho's dismissal motion; (3) the People's response to said motion; (4) a certified transcript of a May 7, 2021 motion hearing; and (5) a May 7, 2021 minute order.

2.

existed that Camacho was likely to engage in sexually violent predatory criminal behavior if released.

Following a January 11, 2005 trial, the court found that Camacho was an SVP and committed him for a two-year period to the custody of the State Department of Mental Health.[3] (See former § 6604, added by Stats. 1995, ch. 763, § 3.) The following year, the SVPA was amended to change the length of commitment from two years to an indeterminate term. (See § 6604, as amended by Stats. 2006, ch. 337, § 55, eff. Sept. 20, 2006.)

A medical evaluation prepared on November 6, 2006, reported that Camacho continued to satisfy SVP commitment criteria. Thereafter, a petition to extend Camacho's commitment was filed.

At a February 8, 2007 proceeding, Camacho appeared in person and waived the probable cause hearing. At a March 29, 2007 trial setting conference, Camacho appeared in person and entered a general time waiver. On April 3, 2007, the court ordered Camacho's return to the custody of the State Department of State Hospitals. On May 1, 2007, the matter was continued "for hospital status." On May 8, 2007, the matter was continued "for Dr report / Trial setting." On June 20, 2007, the matter simply "[c]ontinued." On July 6, 2007, the matter was continued "for receipt of Dr report." On July 31, August 7, and August 16, 2007, the matter was continued "for Dr report / Trial setting."

At a January 10, 2008 trial setting conference, the court set trial for May 12, 2008. At an April 25, 2008 readiness conference, the court vacated the pending trial date. At a May 16, 2008 trial setting conference, Eisenhart entered a general time waiver. On July 25, 2008, the public defender declared a conflict. In August 2008, William Davis

---

[3] In 2012, the State Department of Mental Health was renamed the State Department of State Hospitals. (*People v. Superior Court (Karsai)* (2013) 213 Cal.App.4th 774, 778, fn. 1.)

3.

was appointed to represent Camacho. That same month, two updated medical evaluations reported that Camacho continued to meet SVP criteria. Camacho was subsequently transported back to the superior court from the State Department of State Hospitals.

Between October 10, 2008, and May 7, 2009, 18 trial setting conferences were held. Camacho appeared in person at each of them. At the conference held on December 23, 2008, Camacho entered a general time waiver. Eventually, the court set trial for August 17, 2009. Between July 16 and August 6, 2009, three readiness conferences were held. Camacho appeared in person at each of them. The court ultimately vacated the pending trial date.

Between August 17, 2009, and February 8, 2010, two trial setting conferences and three readiness conferences were held. Camacho appeared in person at each of them. At a February 25, 2010 trial setting conference, the deputy district attorney and Davis were present. Camacho's presence was waived and "[t]ime [was] waived." On March 11, 2010, the court ordered Camacho's return to the custody of the State Department of State Hospitals. Between June 17 and December 16, 2010, at least 14 trial setting conferences were held. "Time waive[rs]" were entered in 10 of them. At the conference held on October 12, 2010, the matter was continued "by all parties." Two updated medical evaluations prepared in 2010 reported that Camacho continued to meet SVP criteria.

At least 13 more trial setting conferences were held in 2011. Notably: (1) on February 11, 2011, the parties "agree[d] to continue"; (2) on March 24, 2011, "DA & defense continued"; and (3) at the April 14, 2011 conference, which Davis did not attend, the deputy district attorney indicated "defense [was] still waiting to confirm experts."

Between January 5 and March 15, 2012, six trial setting conferences were held. General time waivers were entered at five of them. At the conference held on March 15, 2012, the matter was continued "by DA and defense." At some point, a petition for Camacho's recommitment was filed. Between April 10 and August 21, 2012, seven "trial

4.

setting / pre-probable cause" conferences were held. General time waivers were entered at five of them. Notably: (1) on April 10, 2012, the matter was continued "by stipulation"; and (2) on July 31, 2012, "Davis & DA continued." The court set a probable cause hearing for March 19, 2013. Between December 4 and 20, 2012, four readiness hearings were held. General time waivers were entered at each of them.

Readiness hearings were held on January 8 and 17, 2013, and a "pre-probable cause" hearing was held on January 29, 2013. The court ended up vacating the pending probable cause hearing date. There were nine proceedings between March 19 and December 19, 2013. At the proceeding held on June 20, 2013, "Defense & DA continued" the matter. Eventually, the court set a probable cause hearing for February 20, 2014.

In 2014, 10 proceedings were held, but there was no probable cause hearing.

In 2015, nine proceedings were held. At each one, the matter was continued. Four updated medical evaluations were prepared in 2015. Three of them—prepared on April 22, June 15, and July 17, respectively—reported that Camacho continued to meet SVP criteria. The other evaluation—prepared on April 27—reported that he no longer satisfied that criteria.

In 2016, eight proceedings were held. At each one, the matter was continued. Notably, at the proceedings held on April 21 and September 15, 2016, the court found "[g]ood cause."

Three proceedings were held between January 19 and March 16, 2017. The court set a probable cause hearing for April 20, 2017. The matter was continued to July 20, 2017, due to Davis's unavailability. On July 20, 2017, the court found "good cause to continue due to contract negotiations regarding attorney Davis." Following four proceedings that took place between August 17 and November 16, 2017, the matter was continued to January 11, 2018. Notably, at the proceeding held on November 16, 2017, a continuance "at request of counsel" was granted.

At a January 11, 2018 proceeding, which Davis did not attend, the deputy district attorney indicated "Davis requested a continuance." The matter was continued to February 15, 2018, and then February 22, 2018, due to Davis's unavailability. "[A]t [the] mutual request of [the] parties," the matter was continued to March 22, 2018, and then May 17, 2018. At the May 17, 2018 proceeding, the court "advise[d] counsel to set up video conference with court's IT . . . ." The matter was continued to June 21, 2018, and then July 5, 2018. At a July 5, 2018 proceeding, which the deputy district attorney did not attend, Camacho appeared via video. The court found "good cause to continue at Davis'[s] request." The matter was continued to August 16, 2018, and then September 20, 2018. At the September 20, 2018 proceeding, over the People's objection, the court granted Davis's request for a continuance. At an October 2, 2018 proceeding, Camacho was "not brought to video for court by hospital." The matter was continued to October 4, 2018, "for [Camacho] to be present via video." At the October 4, 2018 proceeding, Camacho appeared via video and "demand[ed] jury trial." The court set trial for April 2, 2019. At an October 18, 2018 readiness conference, Camacho appeared via video and "request[ed] speedy trial rights." Davis "express[ed] concerns about being ready for trial in December." Nonetheless, the court vacated the pending trial date and set trial for December 11, 2018.

At a November 6, 2018 readiness conference, Camacho appeared in person and moved to dismiss the commitment petition for prejudicial pretrial delay. The court appointed the law firm of Fitzgerald, Alvarez & Ciummo to represent Camacho in connection with this motion and continued the matter to November 29, 2018, to allow newly appointed counsel to research the issue.[4]

---

[4] Various attorneys from this firm appeared on Camacho's behalf. In this opinion, for ease of reference, we identify each attorney as "Fitzgerald, Alvarez & Ciummo."

At a November 29, 2018 readiness conference, where Camacho appeared in person, Davis declared a conflict and was relieved. Fitzgerald, Alvarez & Ciummo was appointed to represent Camacho for all purposes. It requested a continuance, and the readiness conference was continued. The court confirmed the December 11, 2018 trial date. At a December 6, 2018 readiness conference, Camacho appeared in person and entered a general time waiver. The court vacated the pending trial date, set trial for February 19, 2019, and ordered Camacho's return to the custody of the State Department of State Hospitals.

At a January 24, 2019 readiness conference, the People requested a continuance. Neither Camacho—who appeared via video—nor Fitzgerald, Alvarez & Ciummo objected. The court vacated the pending trial date. Four trial setting conferences were held between March 21 and May 16, 2019. Camacho appeared via video at each of them. Notably: (1) at the March 21, May 9, and May 16, 2019 conferences, Fitzgerald, Alvarez & Ciummo "request[ed] additional time" and the People did not object; and (2) at the April 18, 2019 conference, there was a "[m]utual request to continue." At a June 4, 2019 proceeding, Camacho was unable to appear via video due to technical difficulties. Fitzgerald, Alvarez & Ciummo "request[ed] additional time" and the People did not object. At a June 27, 2019 proceeding, where Camacho appeared via video, Fitzgerald, Alvarez & Ciummo "request[ed] additional time." Once again, the People did not object. On July 18, 2019, Camacho appeared via video and requested a trial date. The court set trial for October 15, 2019. Camacho was subsequently transported back from the State Department of State Hospitals. At an October 11, 2019 readiness conference, Fitzgerald, Alvarez & Ciummo asked the court to "vacate trial due to [being] currently in trial on another case." The court found "good cause" and granted the request. Camacho, who appeared in person, entered a general time waiver. The court set trial for December 3, 2019. On December 3, 2019, where Camacho appeared in person, Fitzgerald, Alvarez & Ciummo's request for a continuance to file a motion was granted. The court set trial for

7.

February 18, 2020. Camacho returned to the custody of the State Department of State Hospitals.

At a February 13, 2020 readiness conference, Fitzgerald, Alvarez & Ciummo moved to continue the trial. The People did not object. The court vacated the pending trial date. Camacho, who appeared via video, entered a general time waiver. A scheduled April 9, 2020 proceeding was vacated "due to COVID." Seven proceedings were held between June 11, 2020, and February 16, 2021. Camacho appeared via video at three of them. Notably: (1) on July 13, 2020, the court was "unable to connect" with Camacho at the hospital; (2) on August 19, 2020, where Camacho appeared via video, there was a "[m]utual request to continue"; (3) on January 25, 2021, Camacho was "in quarantine and unable to appear via video"; and (4) on February 16, 2021, Camacho was "unable to appear due to hospital not having a room available for video."

At a February 19, 2021 proceeding, where Camacho appeared via video, Fitzgerald, Alvarez & Ciummo "request[ed] additional time to file" a motion to dismiss the commitment petition for prejudicial pretrial delay. The People did not object. The court granted the request. The dismissal motion was filed on March 11, 2021. Citing *Barker v. Wingo* (1972) 407 U.S. 514 (*Barker*) and *Mathews v. Eldridge* (1976) 424 U.S. 319 (*Mathews*), Fitzgerald, Alvarez & Ciummo contended that Camacho had been deprived of his right to a timely trial. At a May 7, 2021 hearing, the court denied the motion. It reasoned:

> "[I]n applying [the *Barker v. Wingo*] factors, the length of delay is significant, there's no question about it, but most of those delays were at the request of defense counsel, and, uh – and/or mutually agreed upon by the parties for various reasons: Either defense counsel wasn't ready to proceed, having difficulty obtaining expert opinions and evaluations and/or – or was unavailable.
>
> "There – the – Mr. Camacho was present many – on many occasions. He either – by video or was personally present on many

8.

occasions in this case, and, uh, it wasn't until October of 2018 that he personally first asserted a right to speedy trial.

"I could not find – and there's no evidence to support a systemic breakdown in the appointed-counsel system . . . .  [¶] . . . [¶]  . . . I don't find that there was a systemic breakdown in the appointed-counsel system in this history, but there's still – weighing the *Barker/Wingo* factors – was he denied procedural safeguards?

"He's been evaluated multiple times by mental-health experts.  He's had, I think, two or more probable-cause hearings.  He had an extended hearing for extended placement for two years, and he still fell within the findings of an SVP.

"There – it is troubling for the length of time that this case has lingered without a trial on the merits, but most of that is attributable to Mr. Camacho or his counsel.

"[Fitzgerald, Alvarez & Ciummo]'s argument to blame it on the Court and blame it on the People, uh, when it appears that it's the defense who's making a motion either personally or through his attorney or at least, at a minimum, Mr. Camacho has not expressed any objection to the continuance until October – of the multiple continuances until October of 2018.  [¶] . . . [¶]

". . .  [Camacho] had counsel representing him; and, presumably, in some type of communication with them; and so, you know, that's still a basis of impugning the reasons for the continuances to him based on his counsel's multiple requests.  [¶] . . . [¶]

". . .  Well, the other factor is the risk of prejudice, the length of his hospitalization and – is a loss of a significant right; but, uh, as far as preparing for the defense, uh, in an SVP trial, I don't find any prejudice.

"I mean, it's still going to be based on expert opinions, based on the nature of the defense, based on whether he continues to suffer from a mental disorder, whether he presents a substantial danger to the public, and at least from the reports which are available, that's – those conditions all still exist . . . ."

The court confirmed June 15, 2021, as the trial date and continued the matter for a readiness conference on June 10, 2021.

## DISCUSSION

### I.      Relevant law

"Under the SVPA, the state can civilly commit an individual found to be an SVP indefinitely for confinement and appropriate treatment in a state hospital." (*People v. Tran* (2021) 62 Cal.App.5th 330, 347 (*Tran*).)  "An SVP is 'a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' " (*Id.* at pp. 346-347, quoting § 6600, subd. (a)(1).)

"An SVP petition must be supported by at least two evaluations by mental health experts appointed by the Director of State Hospitals opining that the person meets the commitment criteria.  [Citations.]  After the petition is filed, the trial court must 'review the petition and determine whether the petition states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release.' [Citation.]  If the court finds that the petition is facially sufficient, it must hold a probable cause hearing within 10 days.  [Citation.]  The probable cause hearing may be continued upon a showing of good cause.  [Citation.]  If probable cause is found, the subject of the petition is entitled to a trial.  [Citations.]" (*Tran*, *supra*, 62 Cal.App.5th at p. 347, fn. omitted.)

" 'The SVPA does not establish a deadline by which a trial on an SVP petition must be held after the trial court finds probable cause to believe the inmate is an SVP.' [Citation.]  Further, because it is a civil proceeding—not a criminal prosecution—the Sixth Amendment right to a speedy trial does not apply.  [Citation.]  Nevertheless, '[b]ecause civil commitment involves a significant deprivation of liberty, a defendant in an SVP proceeding is entitled to due process protections.' [Citation.]  This includes the due process right to a *timely* trial.  [Citation.]" (*Tran*, *supra*, 62 Cal.App.5th at p. 347, fn.

10.

omitted.)  " 'Neither the California Supreme Court nor the United States Supreme Court has decided what test is to be applied in deciding a due process/timely trial claim in an SVP proceeding.' [Citation.]  California Courts of Appeal have consistently applied the tests articulated in *Barker . . .* and *Mathews . . . .* [Citations.]" (*Id.* at pp. 347-348.)

*Barker* "set forth a nonexhaustive list of four factors for courts to consider when determining whether the right to a speedy trial has been violated:  (1) the length of the delay; (2) who is to blame for the delay; (3) the defendant's assertion of the right; and (4) prejudice.  [Citations.]  None of these factors is 'a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant. . . . [T]hese factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.' [Citation.]" (*Tran*, *supra*, 62 Cal.App.5th at p. 348.)

*Mathews* "articulated a more general balancing test of three factors 'for resolving what process is constitutionally due' [citation]:  (1) the private interest affected by the government action; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) the government's interest.  [Citation.]  Like the *Barker* test, the *Mathews* test 'involve[s] careful balancing of the competing interests . . . .' [Citation.]" (*Tran*, *supra*, 62 Cal.App.5th at p. 348.)

## II.    Standard of review

"We review for abuse of discretion a trial court's ruling on a motion to dismiss for prejudicial pretrial delay." (*People v. Superior Court (Vasquez)* (2018) 27 Cal.App.5th 36, 55 (*Vasquez*).)  "Under an abuse of discretion standard, ' "[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." ' [Citations.]" (*Ibid.*)

11.

"Findings of fact are reviewed under a 'substantial evidence' standard. [Citation.] The standard is deferential: 'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination . . . .' [Citation.]" (*People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 681, italics & fn. omitted.) "Under the substantial evidence standard of review our role does not involve a reevaluation of the evidence. Rather, we presume the existence of every fact the court could reasonably have deduced from the evidence." (*People v. Fultz* (2021) 69 Cal.App.5th 395, 416.) For instance, "when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 874, italics omitted.)

Ultimately, a reviewing court is "required to uphold [a discretionary] ruling if it is correct on any basis, regardless of whether such basis was actually invoked." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32, citing *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.)

## III.    Analysis

In denying Camacho's dismissal motion, the court expressly invoked the *Barker* test but did not mention the *Mathews* test. Consistent with the approach of our sister courts, we will analyze the due process claim under both. (See *Tran*, *supra*, 62 Cal.App.5th at p. 348.)

a. *Barker*

i. Length of the delay

In 2005, Camacho was committed to the custody of the former State Department of Mental Health. In late 2006, a petition to extend his SVP commitment was filed. In early 2007, Camacho appeared in court and waived the probable cause hearing. Thereafter, for approximately five years, no trial was conducted. In 2012, a petition for Camacho's recommitment was filed. Thereafter, for over six years, neither a probable cause hearing nor a trial was conducted. In October 2018, Camacho "demand[ed] jury trial" and "request[ed] speedy trial rights." Up to when the dismissal motion was filed on March 11, 2021, no trial was conducted. "[T]hese substantial delays weigh in [Camacho]'s favor." (*Tran*, *supra*, 62 Cal.App.5th at p. 349.)

ii. Blame for the delay

"In the *Barker* analysis, the reason for the delay is the 'flag all litigants seek to capture.' [Citation.] 'A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.' [Citation.]" (*People v. Williams* (2013) 58 Cal.4th 197, 239 (*Williams*).)

Here, the record shows the delay was at Camacho's request or agreement. His right to due process was not violated.

A November 6, 2006 medical evaluation reported that Camacho continued to satisfy SVP criteria and a petition to extend his commitment was filed in late 2006.

Camacho appeared in court twice in early 2007. On February 8, 2007, he waived the probable cause hearing. On March 29, 2007, Camacho entered a general time waiver. He was then returned to the custody of the State Department of State Hospitals. The

13.

matter was continued for various reasons, i.e., "for hospital status," "for Dr report / Trial setting," or "for receipt of Dr report." The court set but later vacated a May 12, 2008 trial date.

At a May 16, 2008 trial setting conference, Camacho's counsel entered a general time waiver. The public defender subsequently declared a conflict in July 2008 and, in August, Davis was appointed to represent Camacho. Two updated medical evaluations reported that Camacho continued to meet SVP criteria. Camacho was transported back to the superior court from the State Department of State Hospitals and he appeared in person at 18 trial setting conferences held between October 10, 2008, and May 7, 2009. He entered a general time waiver at the December 23, 2008 conference.

Camacho appeared in person at three readiness conferences held between July 16 and August 6, 2009. The court set but later vacated an August 17, 2009 trial date. Camacho appeared in person at five proceedings held between August 17, 2009, and February 8, 2010.

At a February 25, 2010 trial setting conference, in Camacho's absence, Davis entered a time waiver. Apart from the time waivers entered on December 23, 2008, nothing in the record explicitly indicates why the matter was put over at the other proceedings held between October 10, 2008, and February 8, 2010. At each of these proceedings, Camacho appeared in person and no objection was raised. There is no hint that the prosecution "engaged in deliberate delay tactics or acted in bad faith." (*Tran*, *supra*, 62 Cal.App.5th at p. 352.)

Given the change in Camacho's legal representation as well as the submission of medical evaluations unfavorable to him, both of which occurred at around the same time, one could reasonably deduce that the court continued the matter largely "to ensure adequate preparation and a fair trial" (*Williams*, *supra*, 58 Cal.4th at p. 251), which inured to Camacho's "direct benefit" (*Tran*, *supra*, 62 Cal.App.5th at p. 353). (See *Townsend v. Superior Court* (1975) 15 Cal.3d 774, 782 (*Townsend*) [trial court "must

carefully navigate procedurally between 'the Scylla of delay and the Charybdis of ineffective and inadequate representation' "].)

On or after March 11, 2010, Camacho was returned to the custody of the State Department of State Hospitals and would not make another court appearance—in person or via video—until July 5, 2018. Between June 17 and December 16, 2010, at least 14 trial setting conferences were held, and Davis entered time waivers at 10 of them. At the October 12, 2010 conference, the matter was specifically continued "by all parties." Two updated medical evaluations prepared in 2010 reported that Camacho continued to meet SVP criteria.

In 2011, at least 13 more trial setting conferences were held. At the February 11 and 24, 2011 conferences, the parties expressly agreed to continue the matter. At the April 14, 2011 conference, the deputy district attorney advised the court that Davis—who was not present—was "still waiting to confirm experts."

Between January 5 and March 15, 2012, six trial setting conferences were held and Davis entered general time waivers at five of them. At the March 15, 2012 conference, the matter was specifically continued "by DA and defense." After a petition for Camacho's recommitment was filed, seven "trial setting / pre-probable cause" conferences were held between April 10 and August 21, 2012, and Davis entered general time waivers at five of them. At the April 10 and July 31, 2012 conferences, the parties expressly agreed to continue the matter. After the court set a probable cause hearing for March 19, 2013, four readiness hearings were held between December 4 and 20, 2012, and Davis entered general time waivers at each of them.

Following three more proceedings held between January 8 and 29, 2013, the court vacated the pending probable cause hearing date. Nine proceedings were held between March 19 and December 19, 2013. At the June 20, 2013 proceeding, the parties expressly agreed to continue the matter. The court set a probable cause hearing for February 20, 2014.

15.

Ten proceedings were held in 2014, none of which was the probable cause hearing.

Nine proceedings were held in 2015 and the matter was continued at each one. Four updated medical evaluations were prepared in 2015, three of which were unfavorable to Camacho.

Eight proceedings were held in 2016 and the matter was continued at each one. At the April 21 and September 15, 2016 proceedings, the court expressly found good cause to continue.

Following three more proceedings held between January 19 and March 16, 2017, the court set a probable cause hearing for April 20, 2017. Due to Davis's unavailability, the matter was continued to July 20, 2017. On that date, the court found "good cause to continue due to contract negotiations regarding attorney Davis." Four more proceedings were held between August 17 and November 16, 2017. At the November 16, 2017 proceeding, a continuance "at request of counsel" was granted. The matter was continued to January 11, 2018.

On January 11, 2018, the deputy district attorney informed the court that Davis—who was not present—"requested a continuance." Subsequently, due to Davis's unavailability, the matter was continued to February 22, 2018. The matter was then continued to May 17, 2018, at the parties' mutual request.

Nothing in the record suggests that the prosecution engaged in deliberate delay tactics or acted in bad faith at the proceedings held between June 17, 2010, and the early part of 2018. (See *Tran*, *supra*, 62 Cal.App.5th at p. 352.) Instead, in view of the two unfavorable medical evaluations in 2010, the deputy district attorney's remark at the April 14, 2011 trial setting conference that Davis was "still waiting to confirm experts," and the three unfavorable medical evaluations in 2015, one could reasonably infer that Davis—on behalf of Camacho—entered time waivers and either requested or acquiesced to continuances in order to secure more favorable evaluations. (See *Williams*, *supra*, 58

16.

Cal.4th at p. 251; *Townsend*, *supra*, 15 Cal.3d at p. 782; *Tran*, *supra*, 62 Cal.App.5th at p. 353.)  In fact, one such evaluation was obtained in 2015, though it depicted the minority view.  There also appear to be valid reasons given for some of the continuances, namely Davis's unavailability and "good cause" "contract negotiations."  (See *Williams*, *supra*, at p. 239.)

At the May 17, 2018 proceeding, the court instructed counsel to arrange video conferencing.  Ostensibly, the matter was continued to allow time to prepare.  (See *Williams*, *supra*, 58 Cal.4th at p. 239 [valid reasons justify appropriate delay].)  At a July 5, 2018 proceeding, Camacho appeared via video, the deputy district attorney was absent, and the court found "good cause to continue at Davis'[s] request."  The matter was continued to September 20, 2018.  On that date, over the People's objection, the court granted Davis's request for a continuance.  (See *Tran*, *supra*, 62 Cal.App.5th at p. 352 [no suggestion that the prosecution "engaged in deliberate delay tactics or acted in bad faith"].)  At an October 2, 2018 proceeding, when Camacho was "not brought to video for court by hospital," the matter then was continued to October 4, 2018.  (See *Williams*, *supra*, at p. 239.)  At the October 4, 2018 proceeding, Camacho appeared via video and "demand[ed] jury trial."  At an October 18, 2018 readiness conference, he appeared via video and "request[ed] speedy trial rights."  The court vacated a pending April 2, 2019 trial date and set trial for December 11, 2018.  At a November 6, 2018 readiness conference, Camacho appeared in person and moved to dismiss the commitment petition for prejudicial pretrial delay.  Fitzgerald, Alvarez & Ciummo was appointed to represent Camacho in connection with this motion and the matter was continued to November 29, 2018, to allow counsel to research the issue.  (See *Williams*, *supra*, at p. 251; *Townsend*, *supra*, 15 Cal.3d at p. 782; *Tran*, *supra*, at p. 353.)  Subsequently, the court relieved Davis (who declared a conflict), appointed Fitzgerald, Alvarez & Ciummo to represent Camacho for all purposes, and granted its request for a continuance.  At a December 6, 2018 readiness conference, Camacho appeared in person

17.

and entered a general time waiver. The court vacated the pending trial date, set trial for February 19, 2019, and ordered Camacho's return to the custody of the State Department of State Hospitals.

Given the change in Camacho's legal representation, one could reasonably deduce that the court continued the matter and Camacho entered a time waiver "to ensure adequate preparation and a fair trial" (*Williams*, *supra*, 58 Cal.4th at p. 251), which inured to Camacho's "direct benefit" (*Tran*, *supra*, 62 Cal.App.5th at p. 353).

At a January 24, 2019 readiness conference, the People expressly requested a continuance. There was no objection by either Camacho—who appeared via video—or Fitzgerald, Alvarez & Ciummo. The court vacated the pending trial date. Four trial setting conferences were held between March 21 and May 16, 2019, and Camacho appeared via video at each of them. At the March 21, May 9, and May 16, 2019 conferences, Fitzgerald, Alvarez & Ciummo "request[ed] additional time" and the People did not object. At the April 18, 2019 conference, the parties mutually agreed to continue the matter. At a June 4, 2019 proceeding, after Camacho was unable to appear via video due to technical difficulties, Fitzgerald, Alvarez & Ciummo "request[ed] additional time" and the People did not object. At a June 27, 2019 proceeding, Camacho was able to appear via video. Fitzgerald, Alvarez & Ciummo "request[ed] additional time" and the People did not object. Except for the June 4, 2019 proceeding, Camacho appeared via video at every proceeding between January 24 and June 27, 2019, and acquiesced to the continuances. (See *Williams*, *supra*, 58 Cal.4th at p. 240.) On July 18, 2019, Camacho appeared via video and requested a trial date. The court set trial for October 15, 2019. Camacho was subsequently transported back to the court from the State Department of State Hospitals. At an October 11, 2019 readiness conference, Fitzgerald, Alvarez & Ciummo's request to "vacate trial due to currently [being] in trial on another case" was granted for "good cause" by the court. Camacho, who appeared in person, entered a general time waiver and the court set trial for December 3, 2019. On that date, Camacho

18.

appeared in person and Fitzgerald, Alvarez & Ciummo requested a continuance to file a motion, which was granted. The court set trial for February 18, 2020, and ordered Camacho's return to the custody of the State Department of State Hospitals.

At a February 13, 2020 readiness conference, Fitzgerald, Alvarez & Ciummo moved to continue the trial. The People did not object and the court vacated the pending trial date. Camacho, who appeared via video, entered a general time waiver. Between July 18, 2019, and February 13, 2020, Camacho attended every proceeding, either in person or via video. Although he initially requested a trial date, he later entered time waivers and acquiesced to the continuances. (See *Williams*, *supra*, 58 Cal.4th at p. 240.) As a result of the COVID-19 pandemic, a scheduled April 9, 2020 proceeding was vacated. (See *id.* at p. 239.) Seven proceedings were held between June 11, 2020, and February 16, 2021, three of which Camacho attended via video. On July 13, 2020, Camacho was unable to appear via video due to technical difficulties.

On January 25 and February 16, 2021, he was unable to appear via video due to pandemic-related measures. Nevertheless, Camacho—either personally or through his attorney—acquiesced to the continuances. (See *Williams*, *supra*, 58 Cal.4th at p. 240.) At a February 19, 2021 proceeding, Camacho appeared via video and Fitzgerald, Alvarez & Ciummo "request[ed] additional time to file" a motion to dismiss the commitment petition for prejudicial pretrial delay. The People did not object and the court granted a continuance. The dismissal motion was filed on March 11, 2021.

Hence, the record contains substantial evidence that the delay was "the result of defense counsel's agreement or . . . explicit request." (*Tran*, *supra*, 62 Cal.App.5th at p. 350.) "As a general rule, 'delays caused by defense counsel are properly attributed to the defendant, even where counsel is assigned.' [Citation.]" (*Id.* at p. 349.) This rule " 'is not absolute. Delay resulting from a systemic "breakdown in the public defender system," [citation], could be charged to the State.' [Citation.]" (*Ibid.*; see *id.* at p. 350 [" '[A]n assigned counsel's failure "to move the case forward" does not warrant

19.

attribution of delay to the State.' "]; cf. *People v. DeCasas* (2020) 54 Cal.App.5th 785, 810 ["deleterious effects" of staffing cuts hindered public defender's ability to effectively represent the defendant]; *Vasquez, supra,* 27 Cal.App.5th at pp. 71-73 [dramatic staffing cuts and increased workload hampered public defender's ability to dedicate necessary resources to the defendant's case]; *People v. Litmon* (2008) 162 Cal.App.4th 383, 403 ["[A]ny chronic, systematic postdeprivation delays in SVP cases that only the government can rectify must be factored against the People."].) However, the record does not support such a finding. (See *Tran, supra,* at p. 352 ["Without a more developed factual record, we cannot make a determination whether the defense delays were justifiable, or 'whether the lack of progress was attributable to each attorney's own inability to properly manage or prioritize his or her caseload, or whether the performance of individual attorneys was indicative of unreasonable resource constraints, misallocated resources, inadequate monitoring or supervision, or other systemic problems.' "].)

### iii. Assertion of right

In applying *Barker*'s "assertion-of-right" factor, " '[t]he issue is not simply the number of times the accused acquiesced or objected; rather, the focus is on the surrounding circumstances, such as the timeliness, persistence, and sincerity of the objections, the reasons for the acquiescence, whether the accused was represented by counsel, the accused's pretrial conduct (as that conduct bears on the speedy trial right), and so forth. [Citation.] The totality of the accused's responses to the delay is indicative of whether he or she actually wanted a speedy trial.' [Citation]" (*Williams, supra,* 58 Cal.4th at p. 238.)

The petition to extend Camacho's SVP commitment was filed in late 2006. A separate petition for recommitment was filed in 2012. However, Camacho first asserted his right to a timely trial on October 18, 2018. (Cf. *In re Butler* (2020) 55 Cal.App.5th 614, 629-630, 635, 649 [the defendant made "sincere and repeated demands for speedy trial" starting a month after filing of commitment petition].) Up to October 18, 2018,

20.

Camacho waived time repeatedly and requested or acquiesced to the numerous continuances, either in person or through his attorney. (See *ante*, at pp. 13-17; cf. *Tran*, *supra*, 62 Cal.App.5th at p. 353 ["Defendant made numerous demands to speed up the proceedings and objections to his counsel's requests for continuances."].)

### iv. Prejudice

"We assess prejudice in view of three 'interests of defendants which the speedy trial right was designed to protect'—namely, '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.' " (*Tran*, *supra*, 62 Cal.App.5th at p. 353, quoting *Barker*, *supra*, 407 U.S. at p. 532.)

Here, the length of Camacho's pretrial incarceration "is undoubtedly oppressive and would do little to minimize [his] anxiety and concern" (*Tran*, *supra*, 62 Cal.App.5th at p. 353) and "constitutes some degree of prejudice" (*ibid.*). Nevertheless, regarding "the 'most serious' type of prejudice, the inability to adequately prepare his defense" (*Williams*, *supra*, 58 Cal.4th at p. 236), the record contains substantial evidence that the passage of time improved Camacho's prospects: the first medical evaluation opining that he no longer satisfied SVP criteria was prepared on April 27, 2015. In addition, while " 'excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify' " (*Tran*, *supra*, at p. 354), Camacho cannot benefit from this presumption because substantial evidence demonstrates that he—not the state—was responsible for the delay (see *ante*, at pp. 13-19; *Tran*, *supra*, at p. 354).

### v. Balancing of factors

Of the four *Barker* factors, only one—the length of the delay—unequivocally weighs in Camacho's favor. Accordingly, we conclude that the court did not abuse its discretion when it denied Camacho's dismissal motion.

b. *Mathews*

i. Private interest affected

Camacho "was subjected to a significant curtailment of his liberty during his extended pretrial detention." (*Tran*, *supra*, 62 Cal.App.5th at p. 354.) " 'The right to be free from involuntary confinement is fundamental and deprivation of this right requires due process.' [Citation.]" (*Id.* at pp. 354-355.) The People "acknowledge[] that freedom from involuntary civil confinement as an SVP is significant."

ii. Risk of erroneous deprivation

The original petition to commit Camacho as an SVP was filed on August 22, 2002. A probable cause hearing and a trial were conducted on September 24, 2002, and November 11, 2005, respectively. Camacho was found to be an SVP beyond a reasonable doubt and committed to the custody of the State Department of State Hospitals. (Cf. *In re Butler*, *supra*, 55 Cal.App.5th at pp. 625-626 [the defendant detained for 13 years awaiting trial on original SVP petition]; *People v. DeCasas*, *supra*, 54 Cal.App.5th at pp. 789-801 [no trial during 13-year-period following filing of original SVP petition]; *Vasquez*, *supra*, 27 Cal.App.5th at p. 40 [the defendant detained for over 17 years awaiting trial on original SVP petition].) A medical evaluation prepared on November 6, 2006, reported that Camacho continued to satisfy SVP criteria and a petition to extend his commitment was subsequently filed. (See *Tran*, *supra*, 62 Cal.App.5th at p. 355 ["[T]he initial SVP petition had to be supported by evaluations by mental health experts concluding that defendant met the SVP commitment criteria."].) Thereafter, "throughout the life of the case, [Camacho] was reevaluated numerous times to assess whether he still met the SVP criteria." (*Ibid.*, fn. omitted.) The risk of erroneous deprivation "was mitigated by the procedural safeguards required by the SVPA." (*Ibid.*)

22.

### iii. Government's interest

"There is no question that 'the state has a compelling protective interest in the confinement and treatment of persons who have already been convicted of violent sex offenses, and who, as the result of current mental disorders that make it difficult or impossible to control their violent sexual impulses, represent a substantial danger of committing similar new crimes [citations] . . . .' [Citations.]" (*Tran*, *supra*, 62 Cal.App.5th at p. 355.)

### iv. Balancing of factors

Substantial evidence demonstrated that "[a]ny risk of an erroneous deprivation of [Camacho]'s liberty was reasonably mitigated by the procedural requirements of the SVPA" (*Tran*, *supra*, 62 Cal.App.5th at p. 355) and "tip[ped] the scales in favor of [a] finding that [he] was provided with all the process that he was due" (*ibid.*). Once again, we conclude that the court did not abuse its discretion when it denied Camacho's dismissal motion.

## DISPOSITION

The order to show cause is discharged and Camacho's writ petition is denied. Upon finality of this opinion, the stay of trial proceedings is vacated. (*State Water Resources Control Bd. v. Superior Court* (2002) 97 Cal.App.4th 907, 919.)


DETJEN, Acting P. J.

WE CONCUR:


SNAUFFER, J.


DE SANTOS, J.

23.