Filed 1/6/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Petitioner,<br><br>     v.<br><br>THE SUPERIOR COURT OF SANTA CRUZ COUNTY,<br><br>     Respondent;<br><br>MICHAEL THOMAS CHEEK et al.<br><br>     Real Parties in Interest. | H049691<br>(Santa Cruz County<br> Super. Ct. No. ME000030) |

The Santa Cruz County District Attorney petitions for a writ of mandate directing the superior court to vacate its order conditionally releasing Michael Thomas Cheek, a sexually violent predator, to a residence in Santa Cruz County. The district attorney contends the order is contrary to law because Cheek has a history of sexual conduct with children and would be placed within a quarter mile of a school, something expressly prohibited by statute.

The superior court found the statute (Welf. & Inst. Code, § 6608.5, subd. (f)) would not prohibit the proposed placement because the school in question is a private home school that did not exist until after the community was notified of Cheek's pending release—suggesting the school was created for the very purpose of preventing placement in that area. But the statute prohibiting placement of certain sexually violent predators near a school does not require the school to have been operating for any particular time. Nor does the statute contain any language preventing its application to schools operating

in a home. We will therefore issue a peremptory writ of mandate directing the superior court to vacate its placement order.

## I. BACKGROUND

Cheek was convicted of kidnapping, rape, and forcible oral copulation in 1980. He was sentenced to 20 years in prison but soon escaped and committed another rape in 1981. The victim in that case was 15 years old. Cheek was convicted of rape and furnishing a controlled substance to a minor, and he was sentenced to an additional 11 years four months. When Cheek's prison term neared its end, the Santa Cruz County District Attorney successfully petitioned to have him declared a sexually violent predator under the Sexually Violent Predators Act (Welf. & Inst. Code, § 6600 et seq.; SVPA; unspecified statutory references are to this code).

The SVPA allows for involuntary commitment of certain convicted sex offenders. A person convicted of a sexually violent offense is subject to involuntary commitment after release from prison if a diagnosed mental disorder makes it likely the person will continue to engage in sexually violent criminal behavior. (§ 6600, subd. (a)(1).) The law's primary purpose is to protect the public; its secondary objective is to provide treatment for the offender's mental health disorder. (*People v. Peyton* (2022) 81 Cal.App.5th 784, 791-792.) Once it is determined that a person no longer meets the definition of sexually violent predator, he or she must be released. (§ 6604.9.) Alternatively, if an offender remains a sexually violent predator but can be treated in a less restrictive setting—and the public can be adequately protected by conditions allowing for close supervision—the offender can be conditionally released to the community under the supervision of the Department of State Hospitals. (§ 6608.)

In 2019, the Department of State Hospitals deemed Cheek an appropriate candidate for conditional release. The superior court found Cheek would not endanger the community and could be adequately supervised in a less restrictive setting, making him eligible for conditional release. The court determined Santa Cruz County to be

2

Cheek's county of domicile, meaning he should be placed there absent extraordinary circumstances. (See § 6608.5, subd. (b).) It later found such circumstances to exist, and the area for potential placement was broadened to include five other counties—Butte, Monterey, San Benito, Santa Clara, and San Mateo.

Liberty Healthcare of California, Inc., the agency that manages the conditional release program, spent over a year to identify a site where it believed Cheek could live without posing unacceptable risk to the surrounding community. The site proposed is a rental home in rural Santa Cruz County, in a small town with a population of just over 3,000. There is no cellular service at the property, though cell phone calls can be made by connecting to the home's wireless internet. The staff responsible for supervising Cheek would be approximately 65 miles away with an estimated response time of 75 minutes.

After receiving the recommendation for Cheek's placement at the Santa Cruz County site, the superior court ordered in July 2021 that the Department of State Hospitals notify the surrounding community of the pending release decision, as required by statute. (See § 6609.1.) The notice prompted a significant community response, with hundreds of residents sending letters to the court urging against the placement. State and local legislators also sent correspondence warning that placing Cheek there would endanger the community. Specific concerns included that the remote site has no cellular service and has a lengthy law enforcement response time; it is close to hiking trails; and it is near a bus stop used by children to get to school. The court carefully considered the issues raised and ordered a further investigation and supplemental assessment of the site based on the community concerns.

In November 2021, several months after notice was given to the community, the district attorney provided additional information to the court in opposition to the placement. Included was a declaration from the administrator of a school operating out of a home less than a quarter mile from the proposed placement site. The administrator

3

stated under penalty of perjury that the school is a private school which began instruction in August 2021 with two teachers, who are parents of students. The school has four full time students and six part time students enrolled, and three applicants for future enrollment. The school uses a 180-day school year and filed its private school affidavit in October 2021 in compliance with applicable Education Code requirements. (See Educ. Code, § 33190 [all private schools must file between October 1st and 15th each year an affidavit identifying certain information, including the school's location, enrollment by grade, and number of teachers].)

The district attorney argued Cheek cannot be housed at the proposed site because a sexually violent predator who has a history of improper sexual conduct with children cannot be placed within one-quarter mile of a school.[1] (See § 6608.5, subd. (f)(2).) The superior court accepted that there is a school within a quarter mile of the site. But it went on to find the statutory restriction inapplicable because the school was established only after the community was notified of Cheek's proposed release, explaining: "I will find that [section 6608.5, subdivision] (f)(2) does apply here. But I do not believe that creating a school after the date of notice is grounds for finding a placement comes within the subdivision (f)(2) limitations. I think this is a legal issue, and I think that the date of

---

[1] In the superior court Cheek disputed the threshold issue of whether the school proximity restriction applies to him at all, given the statutory language requiring "a history of improper sexual conduct with children," and that his offenses do not involve more than one minor victim. The court found the rape of a 15-year-old victim qualifies as a history of improper sexual conduct with children, and that ruling has not been challenged. As a result, the proper interpretation of that language in the statute —an issue distinct from the issues raised by the district attorney's petition—is not before us in this proceeding. (See *Pasadena Police Officers Assn. v. Superior Court* (2015) 240 Cal.App.4th 268, 297 [court may grant relief to a party who did not file a petition only where the issue is "necessarily encompassed by the questions raised in the writ petition" and was fully briefed in the trial court].) We therefore do not decide, nor do we express any opinion on, the question of whether the school proximity restriction in section 6608.5 applies to offenders who have not committed offenses against multiple child victims.

the Court's order regarding notice of placement is the last possible—latest possible date for determining whether a school is planned or is in existence." The court ordered Cheek conditionally released to the proposed site.

At the district attorney's request, the superior court temporarily stayed its order to allow for appellate review. The district attorney petitioned this court for a writ of mandate and asked for a further stay to allow consideration of the issues. We granted the stay and issued an order to show cause why relief should not be granted.

## II. DISCUSSION

The decision about where to place a sexually violent predator is a difficult one that requires balancing many interests. The superior court must implement the Legislature's directive that qualifying sexually violent predators receive outpatient treatment in a less-restrictive setting; at the same time, it must protect the community and mitigate any risks to public safety as much as possible. We are confident based on our review of the record that the superior court made a conscientious effort to do all of that here. However, the court's decision cannot stand if it allows something the Legislature has expressly prohibited. To make that determination we must interpret the meaning of the statute, which we do using our independent judgment. (*People ex rel. Lockyer v. Shamrock Foods Inc.* (2000) 24 Cal.4th 415, 432.)

### A. A School Need Not Be in Existence for a Particular Time to Trigger the Statutory Restriction on SVP Placement

The superior court ruled that section 6608.5 does not prevent Cheek's placement at the proposed site, despite his history of sexual conduct with children and despite a recently created private home school located less than a quarter mile away. The court stated its view that to preclude sexually violent predator placement, a school must exist before community notice of the proposed placement. We must decide whether the statute is susceptible of such a requirement.

5

When interpreting a statute, we are mindful of a fundamental rule of statutory construction: a court's role is to give effect to the statute as the Legislature wrote it; not adding to it or revising it as the court might see fit. (*Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474, 478.) The court ascertains and declares what is in the statute; it does not omit what has been inserted or insert what has been omitted. (*Rudick v. State Board of Optometry* (2019) 41 Cal.App.5th 77, 88.) We closely adhere to that rule because of its importance to our system of government. The elected members of the Legislature write the laws, not the courts. To maintain that separation, courts must not rewrite laws under the guise of interpreting them. (*People v. Bell* (2015) 241 Cal.App.4th 315, 342.) "It is well established that it is not the proper function of the courts to supply legislative omissions from a statute in an attempt to make it conform to a presumed intention of the Legislature not expressed in the statutory language." (*Cemetery Board v. Telophase Society of America* (1978) 87 Cal.App.3d 847, 858.) As the United States Supreme Court has put it, no matter how sensible a judge's idea about how a statute should operate, the reviewing court's job is to apply the text of a statute, not improve on it. (*E.P.A. v. EME Homer City Generation, L.P.* (2014) 572 U.S. 489, 491.)

At issue here is section 6608.5, subdivision (f). The statute provides that any sexually violent predator eligible for conditional release who has a history of improper sexual conduct with children "shall not be placed within one-quarter mile of any public or private school providing instruction in kindergarten or any of grades 1 to 12, inclusive." (§ 6608.5, subd. (f).) We see nothing in that language that can be construed to require that the school be planned or in existence before notice of an offender's placement. The Legislature could have prescribed that a school exist at the time notice of placement is given to the community, but it did not. We have no authority to insert that requirement ourselves. Imposing a specific requirement not found in the text goes beyond interpreting the statute. It would amount to rewriting it, which we cannot do.

We understand the superior court's concern that interpreting the statute other than as it did would allow any member of a community where a sexually violent predator could be released to create a private school for the sole purpose of precluding a proposed placement. But the courts must interpret and apply the law as the Legislature enacted it. If the absence of a requirement that a recognized school be operating before community notice is given can obstruct proper application of the statute, it is for the Legislature to remedy any perceived loophole, not the courts.

We note that the current statutory language already protects against disingenuous obstruction of sex offender placement. A resident cannot merely assert their home is a school. To preclude a placement under the statute, a school must in fact be operating as one by "providing instruction in kindergarten or any of grades 1 to 12." (§ 6608.5, subd. (f).) It is undisputed that the school in question here is operating as one, and the evidence supports that conclusion: the school has 10 full- or part-time students and three applicants, and has complied with the registration requirements for a private school. If the evidence did not support that a site purporting to be a school is actually providing instruction, placement would not be precluded.

Contrary to the superior court's interpretation of the statute, section 6608.5, subdivision (f) does not prescribe that a school exist at the time notice is given of a sexually violent predator's proposed placement. The prohibition against releasing an offender with a history of sexual conduct with children to a residence within a quarter mile of a school applies, even if the school commenced operation under the Education Code only after the date of notice to the community.

### B. Home Schools Are Not Categorically Excluded from the Statutory Restriction on SVP Placement

The superior court found that section 6608.5, subdivision (f) applies because of the private school in question, but that the school was established too late to restrict placement nearby. Real parties in interest Cheek and the Department of State Hospitals

7

argue the ruling should not be disturbed because it is ultimately correct, albeit for a different reason: they contend the school proximity restriction does not apply at all because the school in question is a home school. Real parties in interest assert the term "school" in section 6608.5, subdivision (f) applies only to "traditional schools" and does not include private home schools like the one near the proposed placement site in this case.

We look to the statutory text to determine if the Legislature intended to exclude schools located in a home from the placement restriction. We observe the Legislature used broad language to define what kinds of schools trigger the restriction. The statute expressly creates a quarter-mile buffer around "any public or private school providing instruction in kindergarten or any of grades 1 to 12, inclusive." (§ 6608.5, subd. (f).) The only requirement in the statute is that the school provide instruction in kindergarten or grades 1 to 12. Based on the plain text of the statute, the school here qualifies because it provides instruction in the specified grades.

To do what real parties in interest ask and exclude from the statute private schools operating from a home would require us to add a material term not found in the text. For the same reasons we cannot rewrite the statute to require that the school exist at the time notice is given to the community, we cannot rewrite it to exclude schools that operate in a home.

Real parties in interest urge their interpretation of the statue is correct because the Legislature understands home schools to be in a separate category, distinct from public and private schools. But in fact the opposite is true. We note that in *Jonathan L. v. Superior Court* (2008) 165 Cal.App.4th 1074, 1084 the appellate court conducted an exhaustive analysis of relevant Education Code provisions and convincingly concluded the Legislature intended that home schools qualify as private schools for purposes of the state compulsory education law. *Jonathan L.* determined based on legislative history that the Legislature clearly understood some parents home school their children and treat their

8

homes as private schools.  (*Id.* at p. 1098.)  The *Jonathan L.* court decided home schools must be considered private schools because to do otherwise would undermine several statutory and regulatory enactments that "appear to recognize the existence of home schools as private schools."  (*Id.* at p. 1099.)  Real parties in interest's arguments do not persuade us that the Legislature intended the term "school" to include home schools in the context of compulsory education but had a different, and unexpressed, intention in the context presented here.

Real parties in interest suggest that home schools should be treated differently here because the Legislature designed the school proximity restriction to protect large numbers of children assembled away from parental supervision.  The smaller number of children typically present at a home school can be adequately protected, real parties in interest argue, by treating the presence of a home school not as a per se prohibition, but as one factor in the overall consideration of whether placement in a certain area poses too great a risk to community safety.  Whether or not one agrees with that proposition, the text of the statute does not support an intention to limit its application based on school size or character.  It would be a simple matter for the Legislature to express such an intention by stating that the school proximity restriction applies only to schools with some minimum number of students.  Nothing of the sort appears in the statute, however, and here again, the courts cannot add a material term to a statute we are tasked to interpret.  Whether a minimum enrollment is required to trigger the school proximity restriction is a question that must be left to the Legislature.

The Department of State Hospitals offers several reasons why interpreting the statute to include schools operating from a home is problematic.  The Department suggests there may be so many home schools currently operating in California that applying the school proximity exclusion to all of them would make placement of sexually violent predators who have a history of sexual conduct with children "exceedingly difficult, if not impossible."  We note the Department offers no evidence to support that

9

conclusion and concedes it does not have data on that point. On this record, there is no basis to conclude that home schools are so common throughout the state as to make sexually violent predator placement impossible. (Compare *In re Taylor* (2015) 60 Cal.4th 1019, 1040 [blanket enforcement of residency restrictions as applied to sex offender parolees in San Diego County violated constitution where evidence established the restrictions excluded the parolees from 97 percent of rental properties and resulted in 34 percent of affected parolees being homeless].)

The Department also worries that including home schools in the protective buffer zone "would allow residents living in the vicinity of a proposed SVP placement to unilaterally block the placement by simply registering their residence as a home school after receiving notice of the proposed placement," a concern that the superior court appears to have shared. As we have pointed out, however, registration as a home school must be based on actually "providing instruction in kindergarten or any of grades 1 to 12." (§ 6608.5, subd. (f).) Ultimately, problems inherent in the design of a statute are properly directed to the Legislature, which has the ability to change the law as it deems appropriate.

We acknowledge that the concerns raised by the Department are not unreasonable, and including home schools in the statutory restriction contributes to the difficulty of finding a community placement for an offender with a history of sexual conduct with children. But as we have emphasized, courts do not have the authority to add a material requirement to section 6608.5, subdivision (f) that the Legislature has not created. It is therefore necessary that the superior court vacate its order.

## DISPOSITION

Let a peremptory writ of mandate issue, directing the superior court to vacate its order dated November 15, 2021, for the conditional release of Michael Thomas Cheek to a residence in Santa Cruz County.

_____

Grover, J.

**I CONCUR:**

_____

Greenwood, P. J.

H049691 - *The People v. Superior Court*

11

Lie, J., Dissenting:

It is axiomatic that the meaning of a statute begins with its plain language, "because the words of a statute are generally the most reliable indicator of legislative intent." (*In re C.H.* (2011) 53 Cal.4th 94, 100.) When the language is clear, there is no resort to construction. (*In re R.V.* (2015) 61 Cal.4th 181, 192.) Where statutory terms are unclear or ambiguous, we interpret them with reference extrinsic aids, including " ' " ' "the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, … and the statutory scheme of which the statute is a part." ' [Citation.]" [Citation.]' [Citations.]" (*Id.* at pp. 192-193.) I join the majority in their determination that Welfare & Institutions Code section 6608.5, subdivision (f) (section 6608.5(f)) prohibits the placement of one subject to its provisions within one quarter-mile of a public or private school, irrespective of when that school was established. But because I consider the majority's definition of "any public or private school" as encompassing any private home in which the residents elect to home school their children to be inconsistent with both the plain language of the statute and the Legislature's balancing of competing interests, I respectfully dissent.

## I.        The Plain Language

At the outset, the majority states: "We look to the statutory text to determine if the Legislature intended to exclude schools located in a home from the placement restriction." (Maj. opn., *ante*, at p. 8.) As a threshold matter, this framing of the question engages in the logical fallacy of assuming its conclusion. Rather than examining the statutory language to discern whether the Legislature intended "any public or private school" to include homes where schooling occurs, the majority begins instead by signaling its presumption that home schooling—the activity—effectively transforms "a home" into "a school." Then, armed with that presumption, the majority undertakes to resolve the now-tautological question of whether a school-based restriction applies to what the majority has already presumed is a school.

1

On the merits, I would submit that the meaning of "any public or private school" in section 6608.5(f) is plain. " 'When a term goes undefined in a statute, we give the term its *ordinary* meaning.' " (*De Vries v. Regents of University of California* (2016) 6 Cal.App.5th 574, 590-591, italics added.) The District Attorney, relying on *Jonathan L. v. Superior Court* (2008) 165 Cal.App.4th 1074 (*Jonathan L.*), resorts to the modifier "traditional"—as in customary, usual, "ordinary"—as the means of distinguishing when, in its view, the term "private school" does or does not include "home school": in doing so, the District Attorney merely underscores that the ordinary or traditional meaning of a private school excludes a private home. After all, in common parlance, "a school" refers to an established destination where students congregate for instruction, after which they go "home." It is a procrustean construction by which the plain language of "any public or private school" is now made to signify "any home." One may consider oneself a chef and entertain guests at home: this does not make that home a restaurant. Similarly, the instruction provided by a parent at home may constitute "schooling," but it does not transform the home into "a school."

The majority states: "We observe the Legislature used broad language to define what kinds of schools trigger the restriction. . . . The only requirement in the statute is that the school provide instruction in kindergarten or grades 1 to 12. Based on the plain text of the statute, the school here qualifies because it provides instruction in the specified grades." (Maj. opn., *ante*, at p. 8.) More precisely, "a person released under this section shall not be placed within one-quarter mile of any public or private school providing instruction in kindergarten or any of grades 1 to 12," if either of two conditions exist.[1]

---

[1] In dissent, I presume for argument's sake that the condition of "a history of improper sexual conduct with children" may be satisfied by a single offense against a single child victim. Notwithstanding the majority's assertion that it expresses no opinion on the matter (maj. opn., *ante*, at p. 4, fn. 1), it is difficult to reconcile this abstention from deciding a threshold issue with the majority's decision to grant the petition for extraordinary relief. "Where, as here, an issue in the case was necessarily encompassed (continued)

(§ 6608.5(f).) Contrary to the majority's characterization, the Legislature here did not purport to *define* "any school" but instead treated that term as requiring no definition. The next clause, "providing instruction in kindergarten or any of grades 1 to 12," does not function in the statute as a definition of "any public or private school" but as a limitation: only those "public or private schools" that provide K through 12 instruction require the quarter-mile buffer, not public or private colleges or universities, not vocational or trade schools. By treating "any public or private school" as interchangeable with "providing instruction" in any grade through 12th, the majority effectively "reduce[s] the phrase to surplusage, in contravention of the canons of construction." (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1042, overruled on other grounds by *Facebook, Inc. v. Superior Court* (2020) 10 Cal.5th 329, 345, fn. 6.)

## II. Extra-statutory Definitions

The majority follows the District Attorney in relying exclusively on *Jonathan L.*, *supra*, 165 Cal.App.4th 1074 as authority for its expansion of "any public or private school" beyond its traditional meaning to include homes where instruction occurs. But what the court resolved in the dependency context of *Jonathan L*. was limited to "whether home schooling is permitted under California statutes" that made attendance at public schools otherwise compulsory. (*Jonathan L.*, *supra*, 165 Cal.App.4th at p. 1083.) By statute, the only exemptions required either instruction "in a private full-time day school" (Ed. Code, § 48222) or instruction by a private, credentialed tutor (*id*., § 48224).

---

by the questions raised in the writ petition, 'fully briefed in the trial court,' and is 'an issue of law,' we may review that issue[,]" even to the point of "grant[ing] affirmative relief to a party who did not file a writ petition, even where the trial court found in favor of the petitioner on that issue." (*Pasadena Police Officers Assn. v. Superior Court* (2015) 240 Cal.App.4th 268, 297.) The District Attorney having claimed that the superior court *mis*applied the school-proximity restriction of section 6608.5(f), the question whether the restriction applies at all is an issue "necessarily encompassed" by the petition and, now, by this court's order for issuance of the writ.

3

Because the parents in *Jonathan L.* lacked the credential required of "a private tutor," the court evaluated whether education of the children in the home was sufficiently analogous to instruction in "a private full-time day school." (*Jonathan L.*, *supra*, at p. 1093.) In furtherance of this analogy, the court loosely characterized "a home school" as "a private school." But it did not establish that home schooling rendered the home a school for purposes other than the compulsory public education exemption, and " 'cases are not authority for propositions not considered.' [Citation.] 'The holding of a decision is limited by the facts of the case being decided, notwithstanding the use of overly broad language by the court in stating the issue before it or its holding or in its reasoning.' [Citation.]" (*People v. Jennings* (2010) 50 Cal.4th 616, 684.)

It is true that " 'absent indications to the contrary, "a word or phrase . . . accorded a particular meaning in one part or portion of the law, should be accorded the same meaning in other parts or portions of the law . . . ." ' " (*Satele v. Superior Court* (2019) 7 Cal.5th 852, 859.) But for "a school," no such single universal legal usage emerges, but rather an array of definitions, according to context. (See, e.g., Health & Saf. Code, § 11362.768, subd. (h) [" 'school' means any public or private school providing instruction in kindergarten or any of grades 1 to 12, inclusive, but does not include any private school in which education is primarily conducted in private homes"]; Health & Saf. Code, § 42301.9 [same]; Ed. Code, § 32094, subd. (b) [for Covid-19 reporting, " 'Private school' means every person, firm, association, partnership, or corporation offering or conducting private school instruction on the elementary, middle, or high school level, unless the private school instruction is only being provided to one or more pupils of a single household."]; Veh. Code, § 492 ["A 'private school' is any school . . . giving a course of training similar to that given in a public school at or below the twelfth grade, including but not limited to schools owned or operated by any church."].)

Alternatively, the District Attorney cites the Department of Education's webpage as "[t]he best definition for a school." Based on the webpage, the District Attorney

4

asserts that all that is required is "one or more teachers . . . ; . . . an assigned administrator; . . . based in one or more buildings; . . . enrolled or prospectively enrolled students." What the District Attorney omits from the same webpage, however, is the Department of Education's unambiguous indication that these features, though necessary, are not sufficient for state recognition of an educational program as a school. Rather, under the heading, "Is it a Program, or is it a School?" the Department of Education asks, "Is the *educational component* of the entity *secondary* to its primary purpose, which is other than education?" (California Department of Education, Definition of a School <https://www.cde.ca.gov/ds/si/ds/dos.asp> [as of Jan. 6, 2023], archived at <https://perma.cc/          >.) If the answer to this or either of two other questions is yes, it "is not a school, and it may be a program." (*Ibid.*) The educational component of the home whose residents have now opted to school their children outside of public or private schools is plainly not the home's primary purpose, which its administrator has noted is to allow the family to continue "living . . . [in] the area we love, call home, and in which we plan to retire."

## III.    The Statutory Scheme, Its Ostensible Objects, and Legislative Policy

The legislative intent behind section 6608.5(f) was to create zones of exclusion around schools " 'to prevent sex offenders from living near where our children learn and play.' [Citation.]" (*In re E.J.* (2010) 47 Cal.4th 1258, 1271.) The danger to be averted by section 6608.5(f) was not that of housing sex offenders in proximity to where children live: that remains a factor for discretionary consideration. It was driven by the "ambulatory practices of young children going to and coming from school" unsupervised. (*People v. Christman* (2014) 229 Cal.App.4th 810, 818.)

As the Attorney General notes in opposition to the petition, "Had the Legislature sought to bar SVPs from placement near homes where children are present, it would have done so. From the standpoint of a quantum of risk, a home school where one or even a handful of children are instructed by their parents is analytically indistinguishable from

5

an ordinary home where a few children reside.  And yet, the Legislature drew the residency-restriction line at public and private schools."[2]

Blanket enforcement of the slightly more generous school-proximity restriction for sex offender registrants was found to have dramatically increased the incidence of homelessness in the sex offender population and "in turn hampered the surveillance and supervision" of those offenders, "thereby thwarting the legitimate governmental objective behind the registration statute ([Pen. Code,] § 290) to which the residency restrictions attach; that of protecting the public from sex offenders."  (*In re Taylor* (2015) 60 Cal.4th 1019, 1041 [affirming denial of mandate petition challenging injunction against blanket enforcement of Pen. Code, § 3003.5].)  Homelessness among ostensibly supervised sex offenders "weakens GPS tracking, making it more difficult to monitor such parolees and less effective overall" and " 'has a profound impact on public safety[.]' " (*Ibid*.)  The superior court acknowledged the extent of community opposition to the proposed placement but—noting the passage of years since Cheek had been deemed eligible for release—warned that "once an SVP is found suitable for conditional release, the person must be placed in a timely manner."  The court further acknowledged the dearth of alternatives to releasing Cheek as a transient, noting "This court strongly believes that our community will be much safer if Mr. Cheek is released to a specific residence, where he can be closely monitored and his activities restricted."

---

[2] To the extent an outraged public might challenge the wisdom of that line-drawing, "[o]nce a court has determined that a particular SVP would not be a danger to the health and safety of others . . . if under supervision and treatment in the community, that person unquestionably has a significant liberty interest in being released."  (*People v. Superior Court (Karsai)* (2013) 213 Cal.App.4th 774, 788-789 (*Karsai*).)  The final 2019 determination that Cheek could safely be released to his county of domicile is not before us.  And the constitutionality of the state's civil SVP commitment scheme depends on its not becoming a vehicle for the imposition of punishment reserved to the criminal system. (See *Kan. v. Hendricks* (1997) 521 U.S. 346, 372-373 (conc. opn. of Kennedy, J.).)

The majority discounts this concern here on the ground that "there is no basis to conclude that home schools are so common throughout the state as to make sexually violent predator placement impossible." (Maj. opn., *ante*, at p. 10.) Perhaps not until now. But the majority's focus on the current prevalence of home schooling—when the Department of State Hospitals has unambiguously stated neither it nor its contractor has ever treated "home schools" as subject to the school proximity restriction of section 6608.5(f)—overlooks the hazard that its holding for the first time now expressly invites. Accordingly, the relevant inquiry is not whether home schools have until now been so common throughout the state. Rather, it is whether the Legislature intended a construction that would invite inevitable community opposition to placement of one adjudicated a sexually violent predator to coalesce—exactly as it has here[3]—in opting to engage in home schooling.

To the extent that "any public or private school" may be considered ambiguous or unclear in its scope, I would give due regard to the Department of State Hospitals in its interpretation of the restriction. "Whether judicial deference to an agency's interpretation is appropriate and, if so, its extent—the 'weight' it should be given—is . . . fundamentally *situational*." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12.) The Department of State Hospitals is the state agency charged with implementing the conditional release of SVPs since the inception of the statutory civil commitment

---

[3] In his initial opposition to Cheek's placement, the parent of six living at the "Wild Iris Private School" noted at once his children's use of the nearby bus stop "to get to and from school" and his commencement—the day before—of "a small private school made up of several families . . . for the 2021-2022 school year." The same parent later filed an affidavit declaring as of October 4, 2021, that the "Wild Iris Private School" had only two students. He submitted a further declaration in the superior court, attesting that "[a]s of November 15, 2021, Wild Iris Private School has [four] full time students enrolled[,]" for whom his home would be their "primary" school, six "part-time students," and three applications for enrollment of unspecified type.

7

scheme. However controversial its judgments about the propriety of release or the adequacy of release conditions, there can be no dispute that the Department of State Hospitals has hard-earned expertise in the practical difficulties of SVP placement. Where, as here, the agency warns that our narrowing further its range of placement options will make placement "effectively impossible," I believe we should consider that warning rather than ask for past proof of future consequence. To be sure, the interpretation of the statutory terms is the province of the courts, but in considering the " ' " ' "ostensible objects to be achieved" ' " ' " (*R.V.*, *supra*, 61 Cal.4th at p. 192), we disregard that warning at the public's peril, leaving the superior courts little alternative to releasing SVPs as transients without the level of supervision feasible at a fixed address. (See *Karsai*, *supra*, 213 Cal.App.4th at p. 789.) Estimating the number of home schools statewide to be in the tens of thousands, the Department anticipates the difficulty of ascertaining their locations in assessing potential placements will "make conditional-release placement exceedingly difficult, if not impossible."

The majority reasons that the statute already provides a safeguard against "disingenuous obstruction" of sex offender placement, in that home schoolers must by statute be "providing instruction in kindergarten or any of grades 1 to 12." (Maj. opn., *ante*, at p. 7, citing § 6608.5(f).) And neither Cheek nor the Department of State Hospitals has challenged the adequacy or veracity of the affidavits submitted to establish compliance here. At bottom, however, the sincerity of a parent's new commitment to home schooling as a means of defeating Cheek's placement is not the point. The lawfulness of the statutory scheme requires balancing, on the one hand, the due process imperative presented by a years-old determination of Cheek's eligibility for release to the county of his domicile, and the safety concerns of a foreseeably incensed and fearful community, on the other. As the superior court here recognized, enabling the tactical filing of home-schooling affidavits only maximizes the likelihood of Cheek's release as a transient on conditions the community as a whole will find less satisfactory.

8

_____
LIE, J.

*People v. Superior Court (Cheek)*
H049691

9

| | |
|---|---|
| Trial Court: | Santa Cruz County Superior Court<br>Superior Court No. ME000030 |
| Trial Judge: | Hon. Syda K. Cogliati, |
| Counsel for Petitioner:<br>Santa Cruz County District Attorney | Jeffrey S. Rosell<br>District Attorney<br>Tara L. George<br>Chief Deputy District Attorney<br>Lauren A. Apter<br>Assistant District Attorney |
| Counsel for Real Party in Interest:<br>Department of State Hospitals | Rob Bonta<br>Attorney General<br>Cheryl L. Feiner<br>Assistant Attorney General<br>Gregory D. Brown<br>Deputy Attorney General<br>Kevin L. Quade<br>Deputy Attorney General |
| Counsel for Real Party in Interest:<br>Michael Thomas Cheek | Law Office of Stephen J. Prekoski<br>Stephen J. Prekoski |
| Counsel for Respondent:<br>Superior Court of Santa Cruz County | No brief filed |

H049691 - *The People v. Superior Court*

10